*2*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

DOC NO
REC'D/FILED

2007 FEB -9  PM 1:59

THERESA M. OWENS
CLERK US DIST COURT
WD OF WI

ARANDELL CORPORATION;                     )
MERRICK'S, INC.;                          )
SAFETY-KLEEN SYSTEMS, INC.; and           )
SARGENTO FOODS INC.,                      )

              Plaintiffs,               )

**07  C  0076  C**

v.                                        )    Case No.:_____
                                          )
XCEL ENERGY INC.;                         )
NORTHERN STATES POWER COMPANY;            )
AEP ENERGY SERVICES, INC.;                )
AMERICAN ELECTRIC POWER COMPANY, INC.;    )
CANTERA GAS COMPANY, LLC;                 )
CENTERPOINT ENERGY, INC.;                 )
CMS ENERGY CORPORATION;                   )
CMS ENERGY RESOURCE MANAGEMENT COMPANY;   )
CORAL ENERGY RESOURCES, L.P.;             )
DUKE ENERGY CAROLINAS, LLC;               )
DUKE ENERGY TRADING AND MARKETING, L.L.C.;)
DYNEGY INC.;                              )
DYNEGY GP INC DMT HOLDING LP;             )
E PRIME, INC.;                            )
EL PASO CORPORATION;                      )
EL PASO MARKETING, L.P.;                  )
ONEOK ENERGY SERVICES COMPANY, L.P.;      )
ONEOK, INC.;                              )
RELIANT ENERGY, INC.;                     )
RELIANT ENERGY SERVICES, INC.;            )
THE WILLIAMS COMPANIES, INC.;             )
WILLIAMS POWER COMPANY, INC.; and         )
WILLIAMS MERCHANT SERVICES COMPANY, INC., )

              Defendants.               )

## NOTICE OF REMOVAL BY DEFENDANT RELIANT ENERGY SERVICES, INC.

Defendant Reliant Energy Services, Inc. ("Reliant"), by counsel, pursuant to 28 U.S.C.

§§ 1331, 1332, 1441, 1446, and 1453, hereby gives notice to this Court, the Clerk of the Circuit

Court of Dane County, Wisconsin, and plaintiffs Arandell Corporation ("Arandell"), Merrick's,

Inc. ("Merrick's"), Safety-Kleen Systems, Inc. ("Safety-Kleen"), and Sargento Foods, Inc.

("Sargento") (together, the "Plaintiffs"), of the removal of that certain state court action commenced in the Circuit Court of Dane County, Wisconsin, styled *Arandell Corporation, et. al. v. Xcel Energy, Inc., et al.* , No. 2006 CV 4276 (the "State Court Action") to the United States District Court for the Western District of Wisconsin, and respectfully states as follows:

## I.    COMPLIANCE WITH STATUTORY REQUIREMENTS

1.    On December 15, 2006, Plaintiffs, on behalf of themselves and a putative class allegedly consisting of all commercial entities in Wisconsin that purchased natural gas between January 1, 2000 and October 31, 2002 (the "Relevant Time Period"), filed this suit in the Circuit Court of Dane County, Wisconsin. In accordance with 28 U.S.C. § 1446(a), attached as Exhibit 1 is a true and correct copy of the Complaint. Neither the Complaint, nor any other process or pleadings in this action, has been served on Reliant or, to the best of Reliant's knowledge, any Defendant.

2.    This Notice is timely under 28 U.S.C. § 1446(b). Reliant has not yet been served with a copy of the Complaint. *See Delgado v. Shell Oil Co.*, 231 F.3d 165, 177 and n.23 (5th Cir. 2000) ("We read § 1446(b) and its 'through service or otherwise' language as consciously reflecting a desire on the part of Congress to require that an action be commenced against a defendant before removal, but not that the defendant have been served.")

3.    Pursuant to 28 U.S.C. § 1446(d), Reliant will promptly provide written notice of removal of this action to all parties, including Plaintiffs, and promptly file a copy of this Notice with the Clerk of the Circuit Court of Dane County, Wisconsin.

4.    Under 28 U.S.C. § 1453(b) it is not necessary that other Defendants consent to removal.

5.    This Notice of Removal is being signed pursuant to Rule 11 of the Civil Rules of Federal Procedure. *See* 28 U.S.C. § 1446(a).

## II.    STATEMENT OF THE GROUNDS FOR REMOVAL

### A.    REMOVAL OF THIS ACTION IS PROPER UNDER THE CLASS ACTION FAIRNESS ACT.

6.    On February 18, 2005, Congress enacted and the President signed the Class Action Fairness Act of 2005 ("CAFA"). CAFA was designed to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005) (codified in various sections of 28 U.S.C.).

7.    CAFA's provisions apply to any civil action commenced on or after February 18, 2005. Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4, § 9. This action was originally filed on December 15, 2006. Therefore, CAFA applies.

### 1.    CAFA's Jurisdictional Requirements Are Satisfied.

8.    Under 28 U.S.C. § 1332(d)(2)(A), which was added by CAFA's amendments to the diversity jurisdiction statute, the United States District Courts have original jurisdiction of any class action in which the amount in controversy exceeds $5,000,000.00 and "any member of a class of plaintiffs is a citizen of a State different from any defendant." Those jurisdictional requirements are satisfied for the following reasons:

### a.    This is a "class action" for federal jurisdictional purposes.

9.    In the Complaint, Plaintiffs seek to represent a "class consisting of all commercial entities in Wisconsin that purchased natural gas during the Relevant Time Period." (Compl. ¶ 44.) Plaintiffs have brought this action pursuant to the State of Wisconsin's class action statute, Wis. Stat. § 803.08. (Compl. ¶ 45.) CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a

class action." 28 U.S.C. § 1332(d)(1)(B). This action is therefore a class action for the purposes of assessing federal jurisdiction, and 28 U.S.C. § 1332(d)(2) applies.

**b.    The diversity of citizenship requirement is satisfied.**

10.    Plaintiff Arandell is a citizen of the State of Wisconsin. (Compl. ¶ 5.) Plaintiff Merrick's is a citizen of the State of Wisconsin. (Compl. ¶ 6.) Plaintiff Safety-Kleen is a citizen of the State of Wisconsin. (Compl. ¶ 7.) Plaintiff Sargento is a citizen of the State of Wisconsin. (Compl. ¶ 8.) The members of the class Plaintiffs seek to represent are Wisconsin citizens. (Compl. ¶ 44.)

11.    Defendant Xcel Energy, Inc. is a citizen of Minnesota. (Compl. ¶ 9.) Defendant Northern States Power Company is a citizen of Wisconsin. (Compl. ¶ 10.) Defendant AEP Energy Services, Inc. is a citizen of the State of Ohio. (Compl. ¶ 11.) Defendant American Electric Power Company, Inc. is a citizen of the States of New York and Ohio. (Compl. ¶ 12.) Defendant Cantera Gas Company, LLC is a citizen of the States of Delaware and Pennsylvania. (Compl. ¶ 13.) Defendant CenterPoint Energy, Inc. is a citizen of the State of Texas. (Compl. ¶ 14.) Defendant CMS Energy Corporation is a citizen of the State of Michigan. (Compl. ¶ 15.) Defendant CMS Energy Resource Management Company is a citizen of the State of Michigan. (Compl. ¶ 16.) Defendant Coral Energy Resources, L.P. is a citizen of the States of Delaware and Texas. (Compl. ¶ 17.) Defendant Duke Energy Carolinas, LLC is a citizen of the State of North Carolina. (Compl. ¶ 18.) Defendant Duke Energy Trading and Marketing, LLC is a citizen of the States of Delaware and Texas. (Compl. ¶ 19.) Defendant Dynegy Inc. is a citizen of the States of Illinois and Texas. (Compl. ¶ 20.) Defendant Dynegy GP INC DMT Holding LP is a citizen of the States of Delaware, Colorado and Texas. (Compl. ¶ 21.) Defendant E Prime, Inc. is a citizen of the State of Colorado. (Compl. ¶ 22.) Defendant El Paso

Corporation is a citizen of the States of Delaware and Texas. (Compl. ¶ 23.) Defendant El Paso Merchant, L.P. is a citizen of the States of Delaware and Texas. (Compl. ¶ 24.) Defendant Oneok, Energy Services Company, L.P. is a citizen of the States of Delaware and Oklahoma. (Compl. ¶ 25.) Defendant Oneok, Inc. is a citizen of the State of Oklahoma. (Compl. ¶ 26.) Defendant Reliant Energy, Inc. is a citizen of the States of Texas and Delaware. (Compl. ¶ 27.) Defendant Reliant Energy Services, Inc. ("Reliant") is a citizen of the States of Texas and Delaware. (Compl. ¶ 28.) Defendants The Williams Companies, Inc., Williams Power Company, Inc., and Williams Merchant Services Company, Inc., are citizens of the States of Delaware and Oklahoma. (Compl. ¶ 29-31.)

12.    Because at least one Plaintiff is of diverse citizenship from at least one Defendant, the parties are of diverse citizenship for purposes of 28 U.S.C. § 1332(d)(2).

### c.    The amount in controversy requirement is satisfied.

13.    The Complaint seeks damages on behalf of "a class consisting of all commercial entities in Wisconsin that purchased natural gas during the Relevant Time Period." (Compl. ¶ 44.) It seeks damages for the full consideration that class members paid for natural gas from January 1, 2000, to October 31, 2002. (Compl. ¶¶ 1, 55.) Plaintiffs also seek the award of treble damages, less the full consideration recovered. (Compl., Demand for Judgment, ¶ C.) Further, Plaintiffs seek an award of attorneys' fees and costs of suit. (Compl., Demand for Judgment, ¶¶ D, E.) United States' Energy Information Administration statistics show that the value of the full consideration remedy that Plaintiffs seek would be nearly four billion dollars ($3,951,986,000).[1] Further, Plaintiffs also seek treble damages less the amount recovered as "full

---

[1] It is not clear from Plaintiffs' Complaint whether the alleged class of "commercial" entities is intended to be shorthand for "businesses" or, more technically, a specific category of business that is defined by the Energy Information Administration ("EIA") as "nonmanufacturing establishments or agencies primarily engaged in the sale

(continued...)

consideration," which effectively triples the total amount in controversy. *See Sharp Electronics Corp. v. Copy Plus, Inc.*, 939 F.2d 513, 515 (7th Cir. 1991), quoting *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943) ("'[w]here both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount.'"). As shown by publicly available U.S. Government statistics, the full consideration damages that Plaintiffs seek, with or without treble damages, far exceeds CAFA's $5 million jurisdictional threshold as provided in 28 U.S.C. § 1332(d)(2):[2]

---

of goods or services. . . such establishments as hotels, restaurants, wholesale and retail stores and other service enterprises. . ." *See Definitions, Sources and Explanatory Notes* from EIA website at http://tonto.eia.doe.gov/dnav/ng/TblDefs/ng_cons_sum_tbldef2.asp. Reliant believes that, based on its understanding that Plaintiffs are manufacturers, it is likely that they have used the non-technical definition of "commercial" and allege a class that includes both commercial and industrial businesses. Regardless, even if Plaintiffs' class is comprised only of those business that are "commercial," according to the EIA definition, as the chart below shows, the amount in controversy is still greater than $5 million ($1,526,013,540).

[2] Defendants will assert numerous factual and legal defenses to Plaintiffs' claims and contend that Plaintiffs are not entitled to an award of either full consideration damages or treble damages in this case. For purposes of determining whether CAFA's amount-in-controversy requirement is satisfied, however, "the fact that the complaint discloses the existence of a valid defense to the claim" does not prevent the amount-in-controversy requirement from being satisfied. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). Rather, "[t]he claim, whether well or ill founded in fact, fixes the right of the defendant to remove . . . ." *Id.* at 294; *see also Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006), quoting *St. Paul Mercury*, 303 U.S. at 289 ("Once the defendant in a removal case has established the requisite amount in controversy, the plaintiff can defeat jurisdiction only if 'it appears to a legal certainty that the claim is really for less than the jurisdictional amount.'")

**Wisconsin End User Natural Gas Purchases 1/1/2000-10/31/2002
(from United States Energy Information Administration published information)[3]**

|  | 2000 | 2001 | -10/31/2002 | Total |
|---|---|---|---|---|
| Volume of Natural Gas Delivered to End Users by Customer Class (million cubic feet)[4] |  |  |  |  |
| Commercial | 81,139 | 76,439 | 71,500 |  |
| Industrial | 151,923 | 132,638 | 114,755 |  |
| Average Price for Natural Gas Delivered to End Users by Customer Class (per thousand cubic feet) |  |  |  |  |
| Commercial | $6.32 | $7.54 | $6.11 |  |
| Industrial | $5.47 | $7.50 | $5.23 |  |
| Full Consideration |  |  |  |  |
| Commercial | $512,798,480 | $576,350,060 | $436,865,000 | $1,526,013,540 |
| Industrial | $831,018,810 | $994,785,000 | $600,168,650 | $2,425,972,460 |
| Total | $1,343,817,290 | $1,571,135,060 | $1,037,033,650 | **$3,951,986,000** |

---

[3]  *See* Ex. A to Declaration of Douglas M. Poland, attached as Exhibit 2 ("Poland Decl.") at 151 (an excerpt of "Energy Information Administration / Natural Gas Annual 2002"). The Energy Information Administration compiles official United States Government energy statistics. It collects this information from industry surveys, including the mandatory Form EIA-176, "Annual Report of Natural and Supplemental Gas Supply and Disposition" and the voluntary Form EIA-895, "Monthly Quantity and Value of Natural Gas Report." (*See* Ex. A to Poland Decl. at 151, 156-157.)

[4]  The volume of natural gas delivered to Wisconsin end users in this table is calculated by taking the sum of the volumes of natural gas delivered to commercial and industrial end user customers in 2000 and 2001. For 2002, the value is calculated at 10/12 of the 2002 sum. (*See* Ex. A to Poland Decl. at 151.)

2.    **Neither of CAFA's Exceptions to Removal Applies Here.**

14.    28 U.S.C. § 1332(d)(4) provides two exceptions to diversity jurisdiction under CAFA: the "local controversy" exception under 28 U.S.C. § 1332(d)(4)(A) and the "home-state controversy" exception under 28 U.S.C. § 1332(d)(4)(B). *See Hart v. FedEx Ground Package Sys.*, 457 F.3d 675, 679 (7th Cir. 2006). Plaintiffs bear the burden of showing that the home-state or local controversy exceptions to CAFA jurisdiction apply. *Id.* at 680-81. This burden is consistent with the Congress' stated purpose for enacting CAFA:

> (4) Abuses in class actions undermine the national judicial system, the free flow of interstate commerce, and the concept of diversity jurisdiction as intended by the framers of the United States Constitution, in that State and local courts are-
>
> (A) keeping cases of national importance out of Federal court;
>
> (B) sometimes acting in ways that demonstrate bias against out-of-State defendants; and
>
> (C) making judgments that impose their view of the law on other States and bind the rights of the residents of those States.

*Id.* at 681, citing Class Action Fairness Act of 2005, Pub. L. 109-2, § 2, 119 Stat. 4. Plaintiffs cannot meet their burden to show that either exception applies here.

a.    **CAFA's "local controversy" exception does not apply.**

15.    Under 28 U.S.C. § 1332(d)(4)(A), the "local controversy" exception to CAFA jurisdiction, district courts are directed to decline jurisdiction over class actions in which greater than two-thirds of the proposed plaintiff class and at least one defendant "from whom significant relief is sought" and whose alleged conduct "forms a significant basis for the claims asserted" are citizens of the state in which the action was originally filed and in which "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed" unless other similar actions have been filed against

any of the defendants within the previous three years.  28 U.S.C. § 1332(d)(4)(A).  This provision does not support this District Court declining jurisdiction over this action for three independent reasons:

*First*, several other class actions making allegations similar to Plaintiffs' allegations in this case have been filed against Reliant and many of the other defendants during the last 3 years. *See, e.g. Fairhaven Power Co. v. Encana Corp., et al.*, No. 2:05-cv-00243 PMP (PAL) (D. Nev.), *Abelman Art Glass v. Encana Corp., et al.*, No. 2:05-cv-00437 PMP (LRL) (D. Nev.), *Utility Savings & Refund Servs. v. Reliant Energy Servs., et al.*, No. 2:05-cv-00110 PMP (LRL) (D. Nev.), *Leggett, et al. v. Duke Energy, et al.* 2:05-cv-01021 PMP (PAL) (D. Nev.), *JP Morgan Trust Co. N.A. v. Oneok, Inc. et al.* 2:05-CV-01331 PMP (PAL) (D. Nev.), *Breckenridge Brewery of Colorado, LLC, et al v. Oneok, Inc., et al.* 2:06-cv-01351 PMP (PAL) (D. Nev.). Because these cases place similar facts at issue, the Judicial Panel on Multidistrict Litigation has consolidated these actions in a multidistrict litigation proceeding before Judge Philip M. Pro of the District of Nevada. *See, e.g., In re W. States Wholesale Natural Gas Antitrust Litig.*, No. 03-CV-01431 PMP (PAL) (D. Nev. Nov. 3, 2005) MDL-1566 (transfer order) (transferring the *JP Morgan* case to join the previously consolidated actions).

*Second*, Northern States Power Company is the only named defendant that is a Wisconsin citizen.  (Compl. ¶ 9-31; *see also* ¶ 11, *infra*.)  The Complaint, however, contains no specific allegations of wrongdoing against Northern States Power Company and fails to identify the magnitude of relief sought from Northern States Power Company.  It therefore appears that Northern States Power Company is not a defendant from whom "significant relief is sought" or whose "alleged conduct forms a significant basis for the claims asserted."  Indeed, Plaintiffs also

have named Northern States Power Company's corporate parent, Xcel Energy, as a defendant, as they have in the similar class actions pending in other jurisdictions.

**Third**, because the Complaint alleges a conspiracy of nationwide scope, principal injuries from the alleged conduct and from related conduct were allegedly incurred throughout the United States. (*See*, *e.g.*, Compl. ¶ 36 (referring to the alleged "conspiracy" as one by "out-of-state companies" that economically benefited the economies of states other than Wisconsin.)) For these three independent reasons, 28 U.S.C. § 1332 (d)(4) does not apply, and this Court is not required to decline jurisdiction over this case. *See* 28 U.S.C. § 1332 (d)(4)(A)(ii).

### b.  CAFA's "home-state controversy" exception does not apply.

16.      Under 28 U.S.C. § 1332(d)(4)(B), the "home-state controversy" exception to CAFA jurisdiction, district courts are directed to decline jurisdiction over class actions where two-thirds or more of the members of the proposed plaintiff class and the primary defendants are citizens of the original filing state.  This provision does not support this District Court declining jurisdiction because Northern States Power Company is the only <u>one</u> of the 23 named defendants that is a Wisconsin citizen.  (Compl. ¶¶ 9-31.)   And as noted in the previous paragraph, the Complaint contains no specific allegations of wrongdoing against Northern States Power Company.  Indeed, in light of the fact that Northern States Power Company is the only named Defendant in this case that is not named as a defendant in those many similar class actions filed throughout the country, yet Northern States Power Company's corporate parent, Xcel Energy, <u>is</u> named as a defendant in this and the other pending actions, it is evident that Plaintiffs named it as a Defendant solely to try to tie all of the Defendants to the State of Wisconsin for jurisdictional purposes.  It therefore appears from the Complaint itself that Northern States Power Company is not one of the "primary defendants."

17.    Under 28 U.S.C. § 1332(d)(3), district courts have discretion to decline jurisdiction over class actions in which "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the state in which the action was originally filed." 28 U.S.C. § 1332(d)(3). In this case, this Court does not have discretion to decline jurisdiction under 28 U.S.C. § 1332(d)(3) for two independent reasons. *First*, greater than two-thirds of the Plaintiffs are residents of the State of Wisconsin. (Compl. ¶ 44.) *Second*, the only one of 23 defendants who is a resident of the State of Wisconsin—Northern States Power Company—is not one of the "primary defendants" for the reasons set forth above. (Compl. ¶¶ 9-31.) Thus, this Court does not have discretion to decline jurisdiction over this case. 28 U.S.C. § 1332(d)(3).

18.    By removing this case, Reliant does not waive and is not estopped from raising any defenses that were available to it in state court. *See Clark v. Wells*, 203 U.S. 164 (1906). Specifically, Reliant does not waive any objection based on personal jurisdiction or service of process. *See, e.g., Audio Enterprises, Inc. v. B &W Loudspeakers of Amer.*, 957 F.2d 406 (7th Cir. 1992) (concluding that, following removal, district court should have dismissed complaint on defendants' motion for dismissal for insufficiency of service of process).

**B.    Removal of this Action is Proper Under 28 U.S.C. § 1331.**

19.    Alternatively, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 717u. This suit is brought to enforce a liability or duty created by Chapter 15B of 15 United States Code or to enjoin an alleged violation of that chapter or a rule, regulation, or order thereunder. The Complaint is an "artful pleading" in which the Plaintiffs attempt to cloak a federal claim in state-law terms. *See Dreamscape Design, Inc. v. Affinity Network, Inc.*, 414 F.3d 665, 673-74 (7th Cir. 2005), cert. denied, 126 S. Ct. 828 (2005), quoted source omitted ("'It is true that a plaintiff is . . . master of his own complaint and may seek to

avoid federal jurisdiction by pleading only state law claims, . . . but when that complaint, fairly read, states a federal question, the defendant may remove the case to federal court.'").

20.    It is "now well settled: Congress occupied the field of matters relating to wholesale sales and transportation of natural gas in interstate commerce" through the Natural Gas Act ("NGA"). *Schneidewind v. ANR Pipeline*, 485 U.S. 293, 305 (1988) ("*Schneidewind*"). The NGA's occupation of the field is "complete." *Id.* at 310.  Reflecting that Congressional purpose, Section 2 of the NGA confers "exclusive jurisdiction" on the District Courts of the United States "of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of" the NGA.  15 U.S.C. § 717u.  The combination of the NGA's complete preemption, the special jurisdiction provision of § 717u, and the allegations in the Complaint identifying a conspiracy of mostly out-of-state Defendants "to restrain trade or commerce relating to natural gas" as an element of the claim justifies removal of this case to federal court.

21.    Plaintiffs allege that Defendants' alleged activities "resulted in the plaintiffs paying inflated prices for natural gas . . . than they otherwise would have paid if the defendants' conspiracy had not existed." (Compl. ¶ 54.)  They allege as well that Defendants' alleged manipulation of natural gas prices would have a greater negative impact on Wisconsin's economy than many other states, whose economies would benefit from such manipulation. (Compl. ¶ 36.)

22.    An independent ground of removal exists "when a federal statute wholly displaces the state-law cause of action through complete pre-emption." *Ben. Nat'l Bank v. Anderson*, 539 US. 1, 8 (2003).  Complete preemption arises when federal regulation displaces  and replaces state law. *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1075 (7th Cir. 1992).

23.    As noted above, the NGA preempts the field of "matters relating to wholesale sales and transportation of natural gas in interstate commerce." *Schneidewind*, 485 U.S. at 305. This field preemption is "complete." *Id.* at 310; *but see In re W. States Wholesale Natural Gas Antitrust Litig.*, 346 F. Supp. 2d 1123, 1141 (D. Nev. 2004). Plaintiffs allege that "Wisconsin produces no natural gas" and that "[a]ll natural gas consumed in Wisconsin is produced in other states, or in foreign countries." (Compl. ¶ 36.) They also allege that "a conspiracy by out-of-state companies relating to natural gas prices" damages Wisconsin more than other states. (Compl. ¶ 36.) The allegations must be read as affecting wholesale sale and transportation of natural gas in interstate commerce.

24.    The NGA provides the Federal Energy Regulatory Commission ("FERC") a range of remedial powers, including the authority "to change 'any rule, regulation, practice, or contract affecting [rates that] is unjust, unreasonable, unduly discriminatory, or preferential.'" *Schneidewind*, 485 U.S. at 304 (*quoting* 15 U.S.C. § 717d(a)). FERC has promulgated a rule implementing this and other authority that includes a provision for a complaint at FERC for conduct alleged in the Complaint. 18 C.F.R. § 284.288(e) (2005). "[A] detailed administrative enforcement scheme, coupled with Congress's decision to vest [a federal agency] with the power to enforce remedies, weigh on the side of finding" that the federal administrative remedies displace state law remedies. *Botsford v. Blue Cross & Blue Shield of Mont., Inc.*, 314 F.3d 390, 397 (9th Cir. 2002). When such a scheme is coupled with an appropriate "jurisdictional statement" concerning the jurisdiction of federal courts, state law remedies are displaced. *Id.*

WHEREFORE, pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446, and 1453, Reliant

removes this case from the Dane County Circuit Court, Wisconsin, to the United States District

Court for the Western District of Wisconsin.

Dated: February 9, 2007.

LA FOLLETTE GODFREY & KAHN
*an office of Godfrey & Kahn, S.C.*

By: _____
Douglas M. Poland, State Bar No. 1055189
Steven A. Heinzen, State Bar No. 1032278
Attorneys for Defendant Reliant Energy Services,
Inc.

One East Main Street
P.O. Box 2719
Madison, Wisconsin 53701-2719
(608) 257-3911 (phone)
(608) 257-0609 (fax)
*LaFollette Godfrey & Kahn is an*
*office of Godfrey & Kahn, S.C.*

and

Amy E. Tabor
BAKER BOTTS L.L.P.
910 Louisiana Street
Houston, Texas 77002
(713) 229-1234 (phone)
(713) 229-1522 (fax)

*Counsel for Defendant Reliant Energy Services, Inc.*

mn305552_2

## CERTIFICATE OF SERVICE

I certify that on February 9, 2007, a copy of the foregoing Notice of Removal was served

via first class mail upon the following:

Robert L. Gegios
Alexander T. Pendleton
William E. Fischer
KOHNER, MANN & KAILAS, S.C.
Barnabas Business Center
4650 N. Port Washington Road
Milwaukee, WI 53212-1059
*Attorneys for Plaintiffs*

R. Lawrence Ward
R. Daniel Boulware
Jennifer Gille Bacon
Gregory M. Bentz
SHUGHART, THOMSON & KILROY,
P.C.
120 West 12th Street
Kansas City, MO 64105
*Attorneys for Plaintiffs*

Donald D. Barry
BARRY LAW OFFICES, L.L.C.
5340 S.W. 17th Street
Topeka, KS 66604
*Attorneys for Plaintiffs*

Michael J. Miguel
Joseph Duffy
MORGAN LEWIS & BOCKIUS LLP
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
*Attorneys for Defendants Xcel Energy, Inc.,
Northern States Power Company, and e
Prime, Inc.*

Steven J. Routh
Robert B. Wolinsky
HOGAN & HARTSON, L.L.P.
555 – 13th Street N.W.
Washington, DC 20004
*Attorneys for Defendants AEP Energy
Services, Inc. and American Electric Power
Company, Inc.*

Orrin L. Harrison, III
Karen Corallo
AKIN GUMP STRAUSS HAUER & FELD
LLP
1700 Pacific Avenue, Suite 4100
Dallas, TX 75201
*Attorneys for Defendant CenterPoint
Energy, Inc.*

Reginald D. Steer
AKIN GUMP STRAUSS HAUER & FELD
LLP
580 California Street
15th Floor
San Francisco, CA 94104-1036
*Attorneys for Defendant CenterPoint
Energy, Inc.*

Mark Haddad
Michelle B. Goodman
SIDLEY AUSTIN BROWN & WOOD LLP
555 West Fifth Street
Los Angeles, CA 90013
*Attorneys for Defendants CMS Energy
Corporation, CMS Energy Resource
Management Company, and Cantera Gas
Company, LLC.*

Joshua D. Lichtman
FULBRIGHT & JAWORSKI L.L.P.
555 South Flower Street, 41st Floor
Los Angeles, CA  90071
*Attorneys for Defendant Coral Energy*
*Resources, L.P.*

Joel B. Kleinman
Dickstein Shapiro, LLP
1825 Eye Street NW
Washington, DC  20006-5403
*Attorneys for Defendant Duke Energy*
*Carolinas, LLC, Attorneys for Duke Energy*
*Trading and Marketing, L.L.C.*

Douglas R. Tribble
Michael J. Kass
PILLSBURY WINTHROP SHAW
PITTMAN LLP
SBC Building, Suite 1800
101 West Broadway
San Diego, CA  92101
*Attorneys for Defendants Dynegy Inc. and*
*Dynegy GP Inc DMT Holding LP*

Diane Pritchard
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94505-2482
*Attorneys for Defendants El Paso*
*Corporation and El Paso Marketing, L.P.*

Daniel D. Crabtree
STINSON MORRISON HECKER LLP
9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS  66210
*Attorneys for Defendants ONEOK Energy*
*Services Company, L.P. and ONEOK, Inc.*

Mark H. Hamer
Noah A. Katsell
Jeffrey M. Shohet
Stanley J. Panikowski, III
DLA PIPER RUDNICK GRAY CARY
4365 Executive Drive, Suite 1100
San Diego, CA  92121
*Attorneys for Defendants The Williams*
*Companies, Inc., Williams Power Company,*
*Inc., and Williams Merchant Services*
*Company, Inc.*

_____
Douglas M. Poland

STATE OF WISCONSIN                CIRCUIT COURT                DANE COUNTY

ARANDELL CORPORATION, 2006 DEC 15  AM 9:15 Unclassified: 30703
a Wisconsin corporation,          DANE CO. CIRCUIT COURT OVER $5,000.00
N82 W13118 Leon Road,
Menomonee Falls, WI 53051,

MERRICK'S, INC.,
a Wisconsin corporation,
2415 Parview Road,
Middleton, WI 53562,

SAFETY-KLEEN SYSTEMS, INC.,
a Wisconsin corporation,
5400 Legacy Drive,
Cluster II Building 3,
Plano, TX 75024,

        -and-

SARGENTO FOODS INC.,
a Wisconsin corporation,
1 Persnickety Place,
Plymouth, WI 53073,
on behalf of themselves and
all similarly situated,

            Plaintiffs,

        vs.                      **COMPLAINT**

XCEL ENERGY INC.,                Case No.: 06 CV 4276
a Minnesota corporation,
414 Nicollet Mall,
Minneapolis, MN 55401-1993,

NORTHERN STATES POWER COMPANY,
a Wisconsin corporation,
1414 W. Hamilton Avenue, PO Box 8,
Eau Claire, WI 54702,

AEP ENERGY SERVICES, INC.,
an Ohio corporation,
1 Riverside Plaza,
Columbus, OH 43215,

**EXHIBIT**
**1**
tabbies

AMERICAN ELECTRIC POWER COMPANY, INC.,
a New York corporation,
1 Riverside Plaza,
Columbus, OH 43215,

CANTERA GAS COMPANY, LLC,
(f/k/a CMS Field Services, Inc.),
a Delaware limited liability company,
Three Radnor Corporate Center,
100 Matsonford Road, Suite 230,
Radnor, PA 19087,

CENTERPOINT ENERGY, INC.,
a Texas corporation,
1111 Louisiana Street,
Houston, TX 77002,

CMS ENERGY CORPORATION,
(a/k/a CMS Energy),
a Michigan corporation,
One Energy Plaza, EP1-420
Jackson, MI 49201-2276,

CMS ENERGY RESOURCE MANAGEMENT COMPANY,
(f/k/a CMS Marketing Services & Trading Company),
a Michigan corporation,
One Energy Plaza, EP1-420,
Jackson, MI 49201-2276,

CORAL ENERGY RESOURCES, L.P.,
a Delaware limited partnership,
909 Fannin Street, Suite 700,
Houston, TX 77010-1035,

DUKE ENERGY CAROLINAS, LLC,
(f/k/a Duke Energy Corporation),
a North Carolina limited liability company,
526 South Church Street,
Charlotte, NC 28202-1904,

DUKE ENERGY TRADING AND MARKETING, L.L.C.,
a Delaware limited liability company,
5400 Westheimer Court,
Houston, TX 77056-5310,

- 2 -

DYNEGY INC.
an Illinois corporation,
1000 Louisiana Street, Suite 5800,
Houston, TX 77002,

DYNEGY GP INC DMT HOLDING LP
(d/b/a Dynegy Marketing & Trade),
a Colorado general partnership,
1000 Louisiana Street, Suite 5800,
Houston, TX 77002,

E PRIME, INC.,
a Colorado corporation,
1225 17th Street, Suite 900,
Denver, CO 80202,

EL PASO CORPORATION,
a Delaware corporation,
El Paso Building,
1001 Louisiana Street,
Houston, TX 77002,

EL PASO MARKETING, L.P.,
(f/k/a El Paso Merchant Energy, L.P.),
a Delaware limited partnership,
1001 Louisiana Street, Suite 2500,
Houston, TX 77252-2511,

ONEOK ENERGY SERVICES COMPANY, L.P.,
(f/k/a Oneok Energy Marketing And Trading Company, L.P.),
a Texas general limited partnership,
Oneok Plaza,
100 West Fifth Street,
Tulsa, OK 74103,

ONEOK, INC.,
an Oklahoma corporation,
Oneok Plaza,
100 West Fifth Street,
Tulsa, OK 74103,

RELIANT ENERGY, INC.,
(f/k/a Reliant Resources, Inc.)
a Delaware corporation,
1000 Main Street,
Houston, TX 77002,

RELIANT ENERGY SERVICES, INC.,
a Delaware corporation,
1000 Main Street,
Houston, TX 77002,

THE WILLIAMS COMPANIES, INC.,
a Delaware corporation,
One Williams Center,
Tulsa, OK 74172,

WILLIAMS POWER COMPANY, INC.
(f/k/a Williams Energy Marketing & Trading),
a Delaware corporation,
One Williams Center, 50th Floor,
Tulsa, OK 74172,

-and-

WILLIAMS MERCHANT SERVICES COMPANY, INC.,
a Delaware corporation,
One Williams Center,
Tulsa, OK 74172,

                    Defendants.

---

The plaintiffs Arandell Corporation, Merrick's, Inc., Safety-Kleen Systems, Inc. and

Sargento Foods Inc., on behalf of themselves and all others similarly situated, by their attorneys,

for their complaint allege as follows:

## NATURE OF THE CASE

1.       This is a class action, brought by and on behalf of Wisconsin commercial entities

(businesses, industrial operations and institutions) that purchased natural gas between January 1,

2000 and October 31, 2002 (the "Relevant Time Period").  The plaintiffs allege in this case two

causes of action, the first under Wis. Stat. § 133.14 (Wisconsin's "Full Consideration Antitrust

Statute") and the second under Wis. Stat. § 133.18 (Wisconsin's "Treble Damages Antitrust

Statute").

-4-

2.      Under the first cause of action, the plaintiffs seek a declaratory judgment that certain natural gas contracts and agreements made during the Relevant Time Period are void pursuant to Wis. Stat. § 133.14. The grounds for such a ruling are that during the Relevant Time Period the defendants were members of a conspiracy prohibited by Wis. Stat. § 133.03. Specifically, the defendants are sellers of natural gas, and during the Relevant Time Period each of them conspired to restrain trade or commerce relating to natural gas. As such, the contracts or agreements that relate to Wisconsin for the sale of natural gas that were made by the defendants while in the conspiracy, which contracts or agreements were founded upon, were the result of, grew out of or were connected in any way with the conspiracy, either directly or indirectly, are void pursuant to Wis. Stat. § 133.14. The plaintiffs request the Court formally declare such pursuant to Wis. Stat. 806.04, Wisconsin's Uniform Declaratory Judgment Act.

3.      Wis. Stat. § 133.14 further provides that because the defendants were members of a conspiracy prohibited by Wis. Stat. § 133.03, none of them may recover on, or benefit from, any such void contract. Furthermore, under the second sentence of Wis. Stat. § 133.14, the plaintiffs are entitled to recover from the defendants the payments they made for natural gas during the Relevant Time Period, to the full extent that the defendants benefited from those payments. Wis. Stat. § 133.03 and § 133.14 are remedial, punitive statutes, which were created by the Wisconsin legislature to deter companies that should be competitors from engaging in price collusion, so as to protect the free market system. The legislature wanted to deter such so that the benefits of free market lower prices – which benefits can and should flow to the public when price collusion does not occur – are not robbed from the public. Because the defendants violated Wis. Stat. § 133.03 and because those agreements are void under Wis. Stat. § 133.14

plaintiffs are entitled to recover from the defendants in this action the full amount of the

payments the plaintiffs made for natural gas during the Relevant Time Period.

4.      Under the second cause of action, the plaintiffs allege that one or more of the

defendants violated Wis. Stat. § 133.03. Specifically, the defendants are sellers of natural gas,

and during the Relevant Time Period, the defendants violated Wis. Stat. § 133.03 by conspiring

to restrain trade or commerce relating to natural gas. The plaintiffs were directly or indirectly

injured by such conduct. As such, the plaintiffs are entitled pursuant to Wis. Stat. § 133.18 to

recover three times the damages sustained by them from the defendants, reduced after trebling by

any payments actually recovered by the plaintiffs under the plaintiffs' claim under Wis. Stat.

§ 133.14.

## PARTIES

5.      Plaintiff Arandell Corporation is a corporation organized and existing under the

laws of the State of Wisconsin, with its principal place of business in Menomonee Falls,

Wisconsin.

6.      Plaintiff Merrick's, Inc. is a corporation organized and existing under the laws of

the State of Wisconsin, with its principal place of business in Middleton, Wisconsin.

7.      Plaintiff Safety-Kleen Systems, Inc. is a corporation organized and existing under

the laws of the State of Wisconsin, with its principal place of business in Plano, Texas, and

operations in several localities in Wisconsin.

8.      Plaintiff Sargento Foods Inc. is a corporation organized and existing under the

laws of the State of Wisconsin, with its principal place of business in Plymouth, Wisconsin.

9.     Defendant Xcel Energy Inc. is a corporation organized and existing under the laws of the State of Minnesota, with its principal business in Minneapolis, Minnesota. Xcel Energy Inc. is the parent corporation of defendant Northern States Power Company.

10.     Defendant Northern States Power Company is a corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business in Eau Claire, Wisconsin.

11.     Defendant AEP Energy Services, Inc. is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business in Columbus, Ohio.

12.     Defendant American Electric Power Company, Inc. is a corporation organized and existing under the laws of the State of New York, with its principal place of business in Columbus, Ohio.

13.     Defendant Cantera Gas Company, LLC (successor in interest to CMS Field Services, Inc.) is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in Radnor, Pennsylvania.

14.     Defendant CenterPoint Energy, Inc. is a corporation organized and existing under the laws of the State of Texas, with its principal place of business in Houston, Texas.

15.     Defendant CMS Energy Corporation (a/k/a "CMS Energy") is a corporation organized and existing under the laws of the State of Michigan, with its principal place of business in Jackson, Michigan.

16.     Defendant CMS Energy Resource Management Company (f/k/a CMS Marketing, Services and Trading Company) is a corporation organized and existing under the laws of the State of Michigan with its principal place of business in Jackson, Michigan.

- 7 -

17.    Defendant Coral Energy Resources, L.P. is a limited partnership organized and existing under the laws of the State of Delaware, with its principal place of business in Houston, Texas.

18.    Defendant Duke Energy Carolinas, LLC (successor in interest to Duke Energy Corporation) is a limited liability company organized and existing under the laws of the State of North Carolina, with its principal place of business in Charlotte, North Carolina.

19.    Defendant Duke Energy Trading and Marketing, L.L.C. is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Houston, Texas.

20.    Defendant Dynegy Inc. is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business in Houston, Texas.  It is the parent company of defendant Dynegy GP INC DMT Holding LP (d/b/a Dynegy Marketing & Trade).

21.    Defendant Dynegy GP INC DMT Holding LP (d/b/a/ Dynegy Marketing & Trade) is a general partnership organized and existing under the laws of the State of Colorado, with its principal place of business in Houston, Texas.  On information and belief, its general partners are Dynegy GP Inc., a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located in Houston, Texas, and DMT Holdings, L.P., a limited partnership organized and existing under the laws of the State of Delaware, with its principal place of business in Houston, Texas.

22.    Defendant E Prime, Inc. is a corporation organized and existing under the laws of the State of Colorado, with its principal place of business in Denver, Colorado.

23.    Defendant El Paso Corporation is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Houston, Texas.

24.     Defendant El Paso Marketing, L.P. (successor in interest to El Paso Merchant Energy, L.P.) is a limited partnership organized and existing under the laws of the State of Delaware, with its principal place of business in Houston, Texas.

25.     Defendant ONEOK Energy Services Company, L.P. (successor in interest to ONEOK Energy Marketing and Trading Company, L.P.) is a limited partnership organized and existing under the laws of the State of Delaware, with its principal place of business in Tulsa, Oklahoma.

26.     Defendant ONEOK, Inc. is a corporation organized an existing under the laws of the State of Oklahoma, with its principal place of business in Tulsa, Oklahoma.

27.     Defendant Reliant Energy, Inc. (successor in interest to Reliant Resources, Inc.) is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Houston, Texas.

28.     Defendant Reliant Energy Services, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Houston, Texas.

29.     Defendant The Williams Companies, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Tulsa, Oklahoma.

30.     Defendant Williams Power Company, Inc. (successor in interest to Williams Energy Marketing & Trading) is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Tulsa, Oklahoma.

31.     Defendant Williams Merchant Services Company, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Tulsa, Oklahoma.

## VENUE AND JURISDICTION

32.    Although there are several counties in Wisconsin in which venue in this matter would be appropriate and permitted, the resolution of this matter in Dane County is appropriate and permitted by Wis. Stat. § 801.50 because Dane County is a County in which the claim arose, and one or more of the defendants do substantial business in Dane County, in that natural gas sold or traded by the defendants was consumed in Dane County.

33.    This Court has personal jurisdiction over the defendants consistent with the due process clause of the United States Constitution, and pursuant to Wis. Stat. § 801.05, because:

a.    Pursuant to Wis. Stat. § 801.05(1), defendant Northern States Power Company is organized and exists pursuant to Wisconsin law.

b.    Pursuant to Wis. Stat. § 801.05(1)(d), each of the defendants has engaged in substantial and not isolated activities within the State of Wisconsin.

c.    Pursuant to Wis. Stat. § 801.05(5)(c), this action arises out of a promise made to one or more of the plaintiffs, or to a third party for the benefit of one or more of the plaintiffs, by a defendant to deliver or to receive in Wisconsin natural gas.

d.    Pursuant to Wis. Stat. § 801.05(5)(e), because this action relates to natural gas actually received by one or more of the plaintiffs in Wisconsin from one or more of the defendants.

## NATURAL GAS AND WISCONSIN COMMERCE

34.    Each year, Wisconsin consumes over 350,000,000 thousand cubic feet (Mcf) of natural gas. That translates (depending on the price) to an expense to the Wisconsin economy of between 1.75 and 3.5 billion dollars per year, in a state that has a total gross domestic product

- 10 -

(total value of goods and services produced in the state) of only 215 billion dollars per year. Natural gas plays a primary role in the Wisconsin economy, as it is used as a heating fuel for many buildings, generates a substantial percentage of the electricity consumed, and is the primary energy source for many industries (including such major Wisconsin industries as the metal working, food processing, brewing and dairy processing industries). During the Relevant Time Period, Wisconsin consumed over one billion Mcf of natural gas.

35.    Natural gas plays a significant role in the Wisconsin economy. As President Bush said in speech given in Appleton, Wisconsin in 2004 "[n]atural gas is absolutely vital for many manufacturers in Wisconsin."

36.    Wisconsin produces no natural gas. All natural gas consumed in Wisconsin is produced in other states, or in foreign countries. Additionally, most companies that trade in natural gas are not based in Wisconsin. A conspiracy by out-of-state companies relating to natural gas prices has a greater impact on Wisconsin commerce than such a conspiracy would have on commerce in many other states. This is because Wisconsin does not produce natural gas, and very few companies that trade natural gas are located in Wisconsin. A conspiracy to manipulate natural gas prices – while economically benefiting the economies of some other states – has only negative consequences in Wisconsin.

37.    The average monthly price for natural gas for commercial consumers in Wisconsin increased from $5.03 per Mcf in January 2000, to $11.05 per Mcf in January 2001. The average annual price for commercial users increased from $6.59 per Mcf in 2000 to $8.43 per Mcf in 2001. Because of this, at an average increase of $1.84 per Mcf in 2001, Wisconsin commercial consumers paid at least $140 million more for natural gas in 2001 compared to 2000.

- 11 -

## RELEVANT STATUTORY SECTIONS

38.     This case involves the following four sections in Wisconsin's Antitrust Statute

(Wis. Stat. ch. 133):  §§ 133.01, 133.03, 133.14 and 133.18.

39.     Wis. Stat. § 133.01 provides:

**Legislative intent.**

The intent of this chapter is to safeguard the public against
the creation or perpetuation of monopolies and to foster and
encourage    competition    by    prohibiting    unfair    and
discriminatory business practices which destroy or hamper
competition.    It is the intent of the legislature that this
chapter be interpreted in a manner which gives the most
liberal construction to achieve the aim of competition. It is
the intent of the legislature to make competition the
fundamental economic policy of this state and, to that end,
state regulatory agencies shall regard the public interest as
requiring the preservation and promotion of the maximum
level of competition in any regulated industry consistent
with the other public interest goals established by the
legislature.

40.     Wis. Stat. § 133.03 provides:

**Unlawful contracts; conspiracies.**

(1)  Every contract, combination in the form of trust or
otherwise, or conspiracy, in restraint of trade or commerce
is illegal.

41.     Wisconsin's "Full Consideration Antitrust Statute, Wis. Stat. § 133.14, provides:

**Illegal contracts void; recovery.**

All contracts or agreements made by any person while a
member of any combination or conspiracy prohibited by s.
133.03, and which contract or agreement is founded upon,
is the result of, grows out of or is connected with any
violation of such section, either directly or indirectly, shall
be void and no recovery thereon or benefit therefrom may
be had by or for such person. Any payment made upon,
under or pursuant to such contract or agreement to or for
the benefit of any person may be recovered from any

- 12 -

> person who received or benefited from such payment in an
> action by the party making any such payment or the heirs,
> personal representative or assigns of the party.

42.     Wisconsin's "Treble Damages Antitrust Statute," Wis. Stat. § 133.18, in relevant

part provides:

> (1) . . . [A]ny person injured, directly or indirectly, by
> reason of anything prohibited by this chapter may sue
> therefore and shall recover threefold the damages sustained
> by the person and the cost of the suit, including reasonable
> attorney fees.

43.     Finally, Wisconsin's Uniform Declaratory Judgments Act, Wis. Stat. § 806.04,

Provides "Courts of record within their respective jurisdictions shall have the power to declare

rights, status, and other legal relations whether or not further relief is or could be claimed."

## CLASS ACTION

44.     Plaintiffs bring this action both on behalf of themselves and on behalf of a class

consisting of all commercial entities in Wisconsin that purchased natural gas during the Relevant

Time Period, except that the class does not include any federal government agencies, defendants

or defendants' affiliates.

45.     This action is brought and may be properly maintained as a class action pursuant

to Wis. Stat. § 803.08, which provides that "[w]hen the question before the court is one of a

common or general interest of many persons or when the parties are very numerous and it may

be impracticable to bring them all before the court one or more may sue or defend for the benefit

of the whole."

46.     There exists questions of common and general interest to all members of the class,

including but not limited to: (a) whether the defendants engaged in a conspiracy in violation of

Wis. Stat. § 133.03; (b) whether the plaintiffs and those Wisconsin purchasers of natural gas

- 13 -

similarly situated are entitled to a "full consideration" recovery pursuant to Wis. Stat. § 133.14;

and (c) whether the plaintiffs and those Wisconsin purchasers of natural gas similarly situated are

entitled to recover treble damage pursuant to Wis. Stat. § 133.18.  On information and belief the

class is very numerous, numbering in the thousands, and it would be impractical to bring all

members of the class before the Court.

46.      47.     Plaintiffs are able to and will fairly represent the interests of the members of the

class.

## COUNT I:  WIS. STAT. § 133.14 CLAIM

As and for their first cause of action, the plaintiffs allege as follows:

48.     The plaintiffs incorporate by reference the allegations in all of the preceding

numbered paragraphs.

49.     The plaintiffs are commercial entities that have operations in Wisconsin.

50.     During the Relevant Time Period, the plaintiffs entered into agreements to

purchase natural gas for use or resale in Wisconsin.

51.     The defendants during the Relevant Time Period were sellers of natural gas, and

entered into contracts or agreements during the Relevant Time Period to sell natural gas for use

or resale in Wisconsin.

52.     During the Relevant Time Period, the defendants were each a member of a

conspiracy prohibited by Wis. Stat. § 133.03.

53.     While member(s) of a conspiracy prohibited by Wis. Stat. § 133.03, one or more

of the defendants made agreements to sell natural gas which was purchased by one or more of

the plaintiffs, and those agreements either directly or indirectly were the result of, grew out of or

were connected with a violation of Wis. Stat. § 133.03.  Specifically, each of the defendants

- 14 -

during the Relevant Time Period conspired to restrain trade or commerce relating to natural gas, and they received or benefited from the payments made by the plaintiffs pursuant to the plaintiffs' natural gas purchase agreements.

54.    The actions of the defendants resulted in the plaintiffs paying inflated prices for natural gas during the Relevant Time Period. During the Relevant Time Period, natural gas prices in Wisconsin more than doubled. The plaintiffs paid higher prices for natural gas than they otherwise would have paid if the defendants' conspiracy had not existed. The actual product around which the conspiracy centered was sold to purchasers in Wisconsin.

55.    Because of the defendants' conspiracy in violation of § 133.03, the contracts or agreements the defendants entered into during the Relevant Time Period, which contracts or agreements were founded upon, are the result of or which grew out of or is connected with the defendants' violation of Wis. Stat. § 133.03, are void under the first sentence of Wis. Stat. § 133.14. Furthermore, under the second sentence of Wis. Stat. § 133.14, the plaintiffs are entitled to recover from the defendants in this action the payments they made upon, under or pursuant to those void contracts or agreements, which payments were made either directly to any of the defendants, or to or for the benefit of any defendant.

## COUNT II:  WIS. STAT. § 133.18 CLAIM

As and for their second cause of action, the plaintiffs allege as follows:

56.    The plaintiffs incorporate by reference the allegations in all of the preceding numbered paragraphs.

57.    The defendants engaged in conduct prohibited by Wis. Stat. ch. 133. Specifically, the defendants violated Wis. Stat. § 133.03 during the Relevant Time Period by making contracts

- 15 -

or engaging in a combination or conspiracy in restraint of trade or commerce relating to natural gas.

58.    The plaintiffs were injured, directly or indirectly, by the defendants' violation of Wis. Stat. § 133.14, in that the plaintiffs paid higher prices for natural gas during the Relevant Time Period than they would have if the defendants had not violated Wis. Stat. § 133.03.

## DEMAND FOR JUDGMENT

WHEREFORE, plaintiffs, on behalf of themselves and all others similarly situated, demand judgment in their favor and against defendants as follows:

A.    That the Court certify the class as described herein and permit this action to proceed as a class action with one or more of the plaintiffs named herein as the designated representative(s) of the class;

B.    A declaration pursuant to Wis. Stat. § 133.14 and Wis. Stat § 806.04 that the contracts and agreements the defendants entered into during the Relevant Time Period are void, and further that the defendants are jointly and severally liable pursuant to Wis. Stat. § 133.14 to the plaintiffs for repayment of the amounts the plaintiffs paid for natural gas during the Relevant Time Period in an amount to be determined at trial;

C.    Pursuant to Wis. Stat. § 133.18(1)(a), an award of three times the plaintiffs actual damages, in an amount to be determined at trial, reduced after trebling by any amount actually recovered under plaintiffs' § 133.14 claim for the same injury.

D.    An award of the costs and disbursements of this action, including class notice costs and interest;

E.    An award of attorneys' fees pursuant to Wis. Stat. § 133.18(1)(a), or as otherwise may be permitted by Wisconsin law, for the services herein rendered by class counsel;

- 16 -

F.    Pre-judgment and post-judgment interest in the full amount as may be permitted by law; and

G.    Any and all other relief to which plaintiffs are entitled, in equity or at law, under the laws of the State of Wisconsin.

## DEMAND FOR JURY TRIAL

Plaintiffs request trial by jury of all issues so triable.

## REQUEST FOR EXPEDITED PROCEEDINGS

Wis. Stat. § 133.18(5) provides:

> Each civil action under this chapter and each motion or other proceeding in such action shall be expedited in every way and shall be heard at the earliest practicable date.

Pursuant to Wis. Stat. § 133.18(5), plaintiffs request that this action and all motions and proceedings in this action be expedited, consistent with the intent and remedial goals of the Wisconsin legislature as expressed in Wis. Stat. §§ 133.01 and 133.18(5).

Dated this 15th of December, 2006.

KOHNER, MANN & KAILAS, S.C.,
Attorneys for the Plaintiffs

By _____
Robert L. Gegios
State Bar No. 1002906
Alexander T. Pendleton
State Bar No. 1011759
William E. Fischer
State Bar No. 1045725
KOHNER, MANN & KAILAS, S.C.
Barnabas Business Center
4650 N. Port Washington Road
Milwaukee, WI 53212-1059
Telephone:    (414) 962-5110
Facsimile:    (414) 962-8725

- 17 -

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ARANDELL CORPORATION;<br>MERRICK'S, INC.;<br>SAFETY-KLEEN SYSTEMS, INC.; and<br>SARGENTO FOODS INC.,<br><br>            Plaintiffs,<br><br>v.<br><br>XCEL ENERGY INC.;<br>NORTHERN STATES POWER COMPANY;<br>AEP ENERGY SERVICES, INC.;<br>AMERICAN ELECTRIC POWER COMPANY, INC.;<br>CANTERA GAS COMPANY, LLC;<br>CENTERPOINT ENERGY, INC.;<br>CMS ENERGY CORPORATION;<br>CMS ENERGY RESOURCE MANAGEMENT COMPANY;<br>CORAL ENERGY RESOURCES, L.P.;<br>DUKE ENERGY CAROLINAS, LLC;<br>DUKE ENERGY TRADING AND MARKETING, L.L.C.;<br>DYNEGY INC.;<br>DYNEGY GP INC DMT HOLDING LP;<br>E PRIME, INC.;<br>EL PASO CORPORATION;<br>EL PASO MARKETING, L.P.;<br>ONEOK ENERGY SERVICES COMPANY, L.P.;<br>ONEOK, INC.;<br>RELIANT ENERGY, INC.;<br>RELIANT ENERGY SERVICES, INC.;<br>THE WILLIAMS COMPANIES, INC.;<br>WILLIAMS POWER COMPANY, INC.; and<br>WILLIAMS MERCHANT SERVICES COMPANY, INC.,<br><br>            Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No.:_____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF DOUGLAS M. POLAND

      I, Douglas M. Poland, hereby declare pursuant to 28 U.S.C. § 1746 as follows:



EXHIBIT
2

1.    I am one of the counsel representing Defendants Reliant Energy, Inc., and Reliant Energy Services, Inc., in the above-captioned action.  The information contained in this Declaration is based on my personal knowledge.

2.    Exhibit A to this Declaration is a true and correct copy of an excerpt of the Natural Gas Annual 2002 published by the Energy Information Administration, Office of Oil and Gas, U.S. Department of Energy.  I personally viewed and downloaded the Natural Gas Annual 2002 from the Department of Energy's website at:

www.eia.doe.gov/pub/oil_gas/natural_gas/data_publications/natural_gas_annual/historical/2002/pdf/nga02.pdf

3.    I declare under penalty of perjury that the foregoing is true and correct.

Dated:  February 9, 2007.

_____
Douglas M. Poland

mn304932_1

2

DOE/EIA-0131(02)

# Natural  Gas  Annual  2002

# January 2004

**Energy  Information  Administration**
Office  of  Oil  and  Gas
U.S.  Department  of  Energy
Washington,  DC  20585

This report was prepared by the Energy Information Administration, the independent statistical and analytical agency within the Department of Energy. The information contained herein should be attributed to the Energy Information Administration and should not be construed as advocating or reflecting any policy of the Department of Energy or any other organization.

# Preface

The Natural Gas Annual 2002 (NGA) provides information on the supply and disposition of natural gas to a wide audience including Congress, Federal and State agencies, industry analysts, consumers, and education institutions. The 2002 data are presented in a sequence that follows natural gas (including supplemental supplies) from its production to its end use. Tables summarizing natural gas supply and disposition from 1998 to 2002 for each State follow these tables. Annual historical data are shown at the national level.

Data Sources: The data in the *Natural Gas Annual 2002* are primarily taken from surveys conducted by the Energy Information Administrations (EIA), U.S. Department of Energy (DOE). Two EIA surveys - the mandatory Form EIA-176, "Annual Report of Natural and Supplemental Gas Supply and Disposition," and the voluntary Form EIA-895, "Monthly Quantity and Value of Natural Gas Report"- provide most of the information presented in this report. Form EIA-176 was submitted by respondents out of an identified universe of operators of fields, wells, or natural gas processing plants who distribute gas to end users or transport gas across a State border; distribute natural gas; transport natural gas by pipeline; or operate underground natural gas storage facilities. Data collected on Form EIA-176 are not proprietary. Form EIA-895 was sent by the appropriate agencies of the 32 gas producing States.

Other EIA surveys that provided information for this report are:

- EIA-816, "Monthly Natural Gas Liquids Report," and EIA-64A, "Annual Report of the Origin of Natural Gas Liquids Production," for gas processed, plant fuel, and extraction loss data;

- Form EIA-857, "Monthly Report of Natural Gas Purchases and Deliveries to Consumers," for city gate prices;

- EIA-860B, "Annual Electric Generator Report -Nonutility," Form EIA-906, "Power Plant Report," and FERC-423, "Monthly Cost and Quality of Fuels for Electric Plants Report" for the quantity of gas consumed by the electric power sector and the price of natural gas consumed by electric utilities; and

- EIA-910, "Monthly Natural Gas Marketer Survey," for natural gas prices paid by residential and commercial end-use customers in the States of Georgia, Maryland, New York, Ohio and Pennsylvania.

- Office of Fossil Energy report, *Natural Gas Imports and Exports*, for the quantity and price of natural gas imports and exports.

More discussion of data sources and methodology is provided in Appendix A.

Changes to data sources for this Natural Gas Annual include:

- The presentation of natural gas production volumes for the Federal Offshore portion of the Gulf of Mexico has been consolidated and is now presented as the Gulf of Mexico. These changes have been incorporated in this report for report years 2001 and 2002. Because Federal Gulf of Mexico production was previously included in production for the States of Alabama, Louisiana, and Texas, the change in presentation does not affect total U.S. production.

- EIA has enhanced its monthly and annual natural gas prices paid by end-users in the residential and commercial sectors in the States of Georgia, Maryland, New York, Ohio and Pennsylvania with data obtained from a survey of prices paid to natural gas marketers in those States. In the fall of 2001, EIA began collection of information on natural gas sales from marketers in the five States that have active customer choice programs on the Form EIA-910, "Monthly Natural Gas Marketer Survey." Information on the volume and revenue for natural gas commodity sales, and any receipts for distribution charges and taxes associated with the sale of natural gas were requested. At this time, data from the five States are being used for 2002. The methodology for weighting and combining data from local distribution companies and marketers in the States is described in Appendix A.

- EIA's ongoing data quality efforts have resulted in a number of revisions to the 2001 data series. Production volumes have been revised for the Federal offshore and several States. Several data series based on the Form EIA-176, including deliveries to end-users in several States, were also revised. Additionally, revisions have been made to include updates to the electric power and vehicle fuel end-use sectors.

## Natural Gas Publications and Databases Available Electronically

All of the natural gas publications are available electronically on the EIA website. Certain natural gas data are also provided in database formats on the web site. The table below is a guide to the major natural gas products.

| Product | Format | Contents |
|---|---|---|
| **Publications** | | |
| *Weekly Natural Gas Storage Report* | HTML | Weekly estimates of natural gas in underground storage for the U.S. and three regions of the U.S. |
| *Natural Gas Weekly Update* | PDF | Analysis of current price, supply, and storage data |
| *Natural Gas Monthly* | PDF, HTML, XLS | Monthly supply, disposition, and price data |
| *Natural Gas Annual* | PDF, XLS | Annual supply, disposition, and price data |
| *U.S. Crude Oil, Natural Gas and Natural Gas Liquids Reserves* | PDF, HTML | Proved reserves in the United States |
| Oil and Gas Field Code Master *List* | PDF | Listing of U.S. oil and gas field names |
| **Databases** | | |
| Monthly data | TXT | Tables 1-6, and 9 from the *Natural Gas Monthly* |
| Historical monthly data | EXE | Consumption and price data, 1984-1994; 1995-present |
| Annual data | XLS, TXT | Tables from the *Natural Gas Annual* |
| Historical annual data | XLS,TXT | Tables from the *Historical Natural Gas Annual* |
| Field Codes | EXE | Oil & Gas Field Code Master List |
| **Applications** | | |
| EIA-176 Query System | EXE | Company filings to the Form EIA-176, "Annual Report of Natural and Supplemental Gas Supply and Disposition" |

PDF files are image files that can be viewed through Adobe Acrobat.

XLS (Excel) files are in spreadsheet format and are viewable and downloadable to the user's PC.

TXT files are ASCII text. They may be replications of published tables, including table titles, column and row identification, or they may be flat files with a minimum of content description suitable for input to spreadsheets or other programs.

EXE files are executables that can be downloaded then opened. Databases are distributed as self-executing Zipped archives which spawn numerous data files and documentation. Applications are distributed as self-executing Zipped archives which initially generate numerous files and then form an application that is installed on the user's PC.

# Contents

**Page**

Overview <u>Natural Gas Annual 2002 Overview hyperlink</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Supplies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Imports & Exports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Movements and Storage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Consumption . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Consumer Prices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

State Summaries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

Appendices

A. Summary of Data Collection Operations and Report Methodology . . . . . . . . . . . . . . . . . . . . . . . . . 155

B. Metric and Thermal Conversion Tables . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 165

Glossary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 170

# Tables

Page

1.  Summary Statistics for Natural Gas in the United States, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . 1
2.  Natural Gas Production, Transmission, and Consumption by State, 2002 . . . . . . . . . . . . . . . . . . . . . . . 3
3.  Gross Withdrawals and Marketed Production of Natural Gas by State and the Gulf of Mexico, 1998-2002 . . . . . . . 8
4.  Offshore Gross Withdrawals of Natural Gas by State and the Gulf of Mexico, 1998-2002 . . . . . . . . . . . . . . 9
5.  Number of Producing Gas and Gas Condensate Wells by State and the Gulf of Mexico as of Dec. 31, 1998-2002 . . . 10
6.  Wellhead Value and Marketed Production of Natural Gas by State, 1998-2002. . . . . . . . . . . . . . . . . . . . 11
7.  Natural Gas Processed, Liquids Extracted, and Estimated Extraction Loss by State, 2002 . . . . . . . . . . . . . 12
8.  Supplemental Gas Supplies by State, 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
9.  Summary of U.S. Natural Gas Imports and Exports, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
10. Summary of U.S. Natural Gas Imports by Point of Entry, 2000-2002 . . . . . . . . . . . . . . . . . . . . . . . . 17
11. Summary of U.S. Natural Gas Exports by Point of Exit, 2000-2002 . . . . . . . . . . . . . . . . . . . . . . . . . 18
12. Interstate Movements and Movements Across U.S. Borders of Natural Gas by State, 2002. . . . . . . . . . . . . . . 21
13. Additions to and Withdrawals from Gas Storage by State, 2002. . . . . . . . . . . . . . . . . . . . . . . . . . . 28
14. Underground Natural Gas Storage Capacity by State, as of December 31, 2002 . . . . . . . . . . . . . . . . . . . 29
15. Consumption of Natural Gas by State, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
16. Natural Gas Delivered to Consumers by State and Sector, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . 33
17. Natural Gas Delivered to Commercial Consumers for the Account of Others by State, 1998-2002 . . . . . . . . . . . 36
18. Natural Gas Delivered to Industrial Consumers for the Account of Others by State, 1998-2002 . . . . . . . . . . . 38
19. Number of Natural Gas Residential Consumers by Type of Service and State, 2000-2002 . . . . . . . . . . . . . . . 39
20. Number of Natural Gas Commercial Consumers by Type of Service and State, 2000-2002. . . . . . . . . . . . . . . . 40
21. Number of Natural Gas Industrial Consumers by Type of Service and State, 2000-2002 . . . . . . . . . . . . . . . . 41
22. Average City Gate Price of Natural Gas in the United States, 1998-2002 . . . . . . . . . . . . . . . . . . . . . 45
23. Average Price of Natural Gas Delivered to Consumers by State, 2002. . . . . . . . . . . . . . . . . . . . . . . . 46
24. Percent Distribution of Natural Gas Supply and Disposition by State, 2002 . . . . . . . . . . . . . . . . . . . . 50
25. Percent Distribution of Natural Gas Delivered to Consumers by State, 2002. . . . . . . . . . . . . . . . . . . . 51
26. Summary Statistics for Natural Gas - Alabama, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
27. Summary Statistics for Natural Gas - Alaska, 1998-2002. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
28. Summary Statistics for Natural Gas - Arizona, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
29. Summary Statistics for Natural Gas - Arkansas, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58
30. Summary Statistics for Natural Gas - California, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . 60
31. Summary Statistics for Natural Gas - Colorado, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62
32. Summary Statistics for Natural Gas - Connecticut, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . 64
33. Summary Statistics for Natural Gas - Delaware, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66
34. Summary Statistics for Natural Gas - District of Columbia, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . 68
35. Summary Statistics for Natural Gas - Florida, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70
36. Summary Statistics for Natural Gas - Georgia, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72
37. Summary Statistics for Natural Gas - Hawaii, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 74
38. Summary Statistics for Natural Gas - Idaho, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 76
39. Summary Statistics for Natural Gas - Illinois, 1998-2002. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 78
40. Summary Statistics for Natural Gas - Indiana, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80
41. Summary Statistics for Natural Gas - Iowa, 1998-2002. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 82
42. Summary Statistics for Natural Gas - Kansas, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 84
43. Summary Statistics for Natural Gas - Kentucky, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 86
44. Summary Statistics for Natural Gas - Louisiana, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 88
45. Summary Statistics for Natural Gas - Maine, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 90
46. Summary Statistics for Natural Gas - Maryland, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 92
47. Summary Statistics for Natural Gas - Massachusetts, 1998-2002. . . . . . . . . . . . . . . . . . . . . . . . . . 94
48. Summary Statistics for Natural Gas - Michigan, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 96
49. Summary Statistics for Natural Gas - Minnesota, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 98
50. Summary Statistics for Natural Gas - Mississippi, 1998-2002. . . . . . . . . . . . . . . . . . . . . . . . . . 100
51. Summary Statistics for Natural Gas - Missouri, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . 102
52. Summary Statistics for Natural Gas - Montana, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . 104
53. Summary Statistics for Natural Gas - Nebraska, 1998-2002. . . . . . . . . . . . . . . . . . . . . . . . . . . 106
54. Summary Statistics for Natural Gas - Nevada, 1998-2002. . . . . . . . . . . . . . . . . . . . . . . . . . . . 108
55. Summary Statistics for Natural Gas - New Hampshire, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . 110
56. Summary Statistics for Natural Gas - New Jersey, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . 112

57. Summary Statistics for Natural Gas - New Mexico, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 114
58. Summary Statistics for Natural Gas - New York, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 116
59. Summary Statistics for Natural Gas - North Carolina, 1998-2002. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 118
60. Summary Statistics for Natural Gas - North Dakota, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 120
61. Summary Statistics for Natural Gas - Ohio, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 122
62. Summary Statistics for Natural Gas - Oklahoma, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 124
63. Summary Statistics for Natural Gas - Oregon, 1998-2002. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 126
64. Summary Statistics for Natural Gas - Pennsylvania, 1998-2002. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 128
65. Summary Statistics for Natural Gas - Rhode Island, 1998-2002. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 130
66. Summary Statistics for Natural Gas - South Carolina, 1998-2002. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 132
67. Summary Statistics for Natural Gas - South Dakota, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 134
68. Summary Statistics for Natural Gas - Tennessee, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 136
69. Summary Statistics for Natural Gas - Texas, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 138
70. Summary Statistics for Natural Gas - Utah, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 140
71. Summary Statistics for Natural Gas - Vermont, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 142
72. Summary Statistics for Natural Gas - Virginia, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 144
73. Summary Statistics for Natural Gas - Washington, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 146
74  Summary Statistics for Natural Gas - West Virginia, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 148
75. Summary Statistics for Natural Gas - Wisconsin, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 150
76. Summary Statistics for Natural Gas - Wyoming, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 152
A1. Natural Gas Unaccounted for by State, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 164
B1. Summary Statistics for Natural Gas in the United States, Metric Equivalents, 1998-2002 . . . . . . . . . . . . . . . 167
B2. Thermal Conversion Factors and Data, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 168

# Illustrations

1.  Selected Average Prices of Natural Gas in the United States, 1998-2002 . . . . . . . . . . . . . . . . . . . . . . . . . 2
2.  Natural Gas Supply and Disposition in the United States, 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
3.  Marketed Production of Natural Gas in the United States and the Gulf of Mexico, 2002 . . . . . . . . . . . . . . . 7
4.  Marketed Production of Natural Gas in Selected States and the Gulf of Mexico, 2001 - 2002 . . . . . . . . . . . . 7
5.  Net Imports as a Percentage of Total Consumption of Natural Gas, 1998-2002 . . . . . . . . . . . . . . . . . . . 14
6.  Flow of Natural Gas Imports and Exports, 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
7.  Principal Interstate Natural Gas Flow Summary, 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
8.  Interstate Movements of Natural Gas in the United States, 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
9.  Locations of Existing Natural Gas Underground Storage Fields in the United States . . . . . . . . . . . . . . . . . 29
10. Natural Gas Delivered to Consumers in the United States, 1998 - 2002 . . . . . . . . . . . . . . . . . . . . . . . 31
11. Natural Gas Delivered to Consumers in the United States, 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
12. Percent of Natural Gas Deliveries in the United States Representing Deliveries
    for the Account of Others, by Consumer Sector, 1998 - 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
13. Average Price of Natural Gas Delivered to Consumers in the United States, 1998 - 2002 . . . . . . . . . . . . . . 43
14. Average Price of Natural Gas Delivered to Residential Consumers, 1980 - 2002 . . . . . . . . . . . . . . . . . . . 44
15. Average City Gate Price of Natural Gas in the United States, 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . 44
16. Average Price of Natural Gas Delivered to U.S. Residential Consumers, 2002 . . . . . . . . . . . . . . . . . . . . 47
17. Average Price of Natural Gas Delivered to U.S. Commercial Consumers, 2002 . . . . . . . . . . . . . . . . . . . 47
18. Average Price of Natural Gas Delivered to U.S. Onsystem Industrial Consumers, 2002 . . . . . . . . . . . . . . . 48
19. Average Price of Natural Gas Delivered to U.S. Electric Utilities, 2002 . . . . . . . . . . . . . . . . . . . . . . . . 48



Wisconsin — Natural Gas 2002

| | Million Cu. Feet | Percent of National Total | | | Million Cu. Feet | Percent of National Total |
|---|---|---|---|---|---|---|
| Net Interstate Movements: | 390,164 | | | Industrial: | 137,706 | 1.83 |
| Dry Production: | 0 | 0.00 | | Vehicle Fuel: | 206 | 1.38 |
| Deliveries to Consumers: | | | | Electric Power: | 20,541 | 0.36 |
| Residential: | 137,234 | 2.81 | | | | |
| Commercial: | 85,811 | 2.77 | | Total: | 381,498 | 1.80 |

## Table 75.  Summary Statistics for Natural Gas — Wisconsin, 1998-2002

| | 1998 | 1999 | 2000 | 2001 | 2002 |
|---|---|---|---|---|---|
| **Number of Gas and Gas Condensate Wells** | | | | | |
| Producing at End of Year ............................. | 0 | 0 | 0 | 0 | 0 |
| **Production (million cubic feet)** | | | | | |
| Gross Withdrawals | | | | | |
| From Gas Wells ................................. | 0 | 0 | 0 | 0 | 0 |
| From Oil Wells .................................. | 0 | 0 | 0 | 0 | 0 |
| **Total** .......................................................... | **0** | **0** | **0** | **0** | **0** |
| Repressuring ........................................... | 0 | 0 | 0 | 0 | 0 |
| Vented and Flared .................................... | 0 | 0 | 0 | 0 | 0 |
| Wet After Lease Separation .................... | 0 | 0 | 0 | 0 | 0 |
| Nonhydrocarbon Gases Removed .............. | 0 | 0 | 0 | 0 | 0 |
| Marketed Production ............................... | 0 | 0 | 0 | 0 | 0 |
| Extraction Loss ....................................... | 0 | 0 | 0 | 0 | 0 |
| **Total Dry Production** ................................ | **0** | **0** | **0** | **0** | **0** |
| **Supply (million cubic feet)** | | | | | |
| Dry Production .......................................... | 0 | 0 | 0 | 0 | 0 |
| Receipts at State Borders | | | | | |
| Imports .............................................. | 0 | 0 | 0 | 0 | 0 |
| Intransit Receipts ............................... | 0 | 0 | 0 | 0 | 0 |
| Interstate Receipts .............................. | 1,168,021 | 1,189,182 | 1,185,803 | 1,055,490 | 1,137,917 |
| Withdrawals from Storage | | | | | |
| Underground Storage ........................... | 0 | 0 | 0 | 0 | 0 |
| LNG Storage ....................................... | 106 | 114 | 111 | 102 | 94 |
| Supplemental Gas Supplies ...................... | 0 | 0 | 0 | 0 | 0 |
| Balancing Item ........................................ | 5,872 | 15,442 | 13,660 | -4,570 | -4,763 |
| **Total Supply** ........................................... | **1,173,999** | **1,204,737** | **1,199,574** | **1,051,022** | **1,133,248** |

See footnotes at end of table.

Table 75.  Summary Statistics for Natural Gas — Wisconsin, 1998-2002  (Continued)

| | 1998 | 1999 | 2000 | 2001 | 2002 |
|---|---|---|---|---|---|
| **Disposition (million cubic feet)** | | | | | |
| Consumption ................................................ | 368,022 | 380,560 | 393,601 | 359,784 | 385,394 |
| Deliveries at State Borders | | | | | |
| Exports ................................................... | 0 | 0 | 0 | 0 | 0 |
| Intransit Deliveries ............................... | 0 | 0 | 0 | 0 | 0 |
| Interstate Deliveries ............................. | 805,893 | 824,124 | 805,903 | 691,162 | 747,753 |
| Additions to Storage | | | | | |
| Underground Storage.............................. | 0 | 0 | 0 | 0 | 0 |
| LNG Storage ........................................... | 85 | 53 | 71 | 76 | 102 |
| **Total Disposition ...............................** | **1,173,999** | **1,204,737** | **1,199,574** | **1,051,022** | **1,133,248** |
| **Consumption (million cubic feet)** | | | | | |
| Lease Fuel ............................................... | 0 | 0 | 0 | 0 | 0 |
| Pipeline and Distribution Use ..................... | 4,284 | 4,151 | 4,058 | 2,869 | 3,896 |
| Plant Fuel ................................................. | 0 | 0 | 0 | 0 | 0 |
| Delivered to Consumers | | | | | |
| Residential............................................. | 115,946 | 127,607 | 135,095 | 125,277 | 137,234 |
| Commercial............................................ | 81,316 | 81,689 | 81,139 | 76,439 | 85,811 |
| Industrial............................................... | 141,980 | 145,703 | 151,923 | 132,638 | 137,706 |
| Vehicle Fuel........................................... | 119 | 149 | 164 | 203 | 206 |
| Electric Power ....................................... | 24,377 | 21,261 | 21,222 | 22,358 | 20,541 |
| **Total Delivered to Consumers .................** | **363,738** | **376,409** | **389,543** | **356,915** | **381,498** |
| **Total Consumption....................................** | **368,022** | **380,560** | **393,601** | **359,784** | **385,394** |
| **Delivered for the Account of Others (million cubic feet)** | | | | | |
| Residential................................................ | 135 | 152 | 182 | 130 | 0 |
| Commercial............................................... | 21,172 | 17,123 | 17,742 | 17,388 | 20,653 |
| Industrial.................................................. | 110,805 | 116,236 | 118,274 | 107,120 | 108,206 |
| **Number of Consumers** | | | | | |
| Residential................................................ | 1,390,068 | 1,426,909 | 1,458,959 | 1,484,536 | 1,514,700 |
| Commercial............................................... | 134,651 | 135,829 | 140,370 | 144,282 | 149,774 |
| Industrial.................................................. | 9,158 | 9,756 | 9,630 | 9,632 | 9,648 |
| **Average Annual Consumption per Consumer (thousand cubic feet)** | | | | | |
| Commercial............................................... | 604 | 601 | 578 | 530 | 573 |
| Industrial.................................................. | 15,503 | 14,935 | 15,776 | 13,771 | 14,273 |
| **Average Prices for Natural Gas (dollars per thousand cubic feet)** | | | | | |
| Wellhead (Marketed Production).................. | — | — | — | — | — |
| Imports ..................................................... | — | — | — | — | — |
| Exports ..................................................... | — | — | — | — | — |
| Pipeline and Distribution Use ..................... | 0.95 | 2.56 | 3.32 | 3.67 | NA |
| City Gate .................................................. | 3.29 | 3.08 | 4.42 | 5.90 | 4.36 |
| Delivered to Consumers | | | | | |
| Residential............................................. | 6.15 | 6.17 | 7.55 | 8.76 | 7.35 |
| Commercial............................................ | 4.71 | 4.85 | 6.32 | 7.54 | 6.11 |
| Industrial............................................... | 3.78 | 4.07 | 5.47 | 7.50 | 5.23 |
| Vehicle Fuel........................................... | 1.13 | 1.94 | 4.62 | 5.35 | 1.00 |
| Electric Utilities ..................................... | 2.67 | 2.93 | 4.48 | 4.76 | 3.80 |

— = Not applicable.
**Notes:**  Totals may not add due to independent rounding.
**Sources:**  Energy Information Administration (EIA), Form EIA-176, "Annual Report of Natural and Supplemental Gas Supply and Disposition"; Form EIA-895, "Monthly Quantity and Value of Natural Gas Report"; Form EIA-857, "Monthly Report of Natural Gas Purchases and Deliveries to Consumers"; Form EIA-816, "Monthly Natural Gas Liquids Report"; Form EIA-64A, "Annual Report of the Origin of Natural Gas Liquids Production";

Form FERC-423, "Monthly Report of Cost and Quality of Fuels for Electric Plants"; Form EIA-191, "Underground Gas Storage Report"; Office of Fossil Energy, U.S. Department of Energy, *Natural Gas Imports and Exports;* the U.S. Minerals Management Service; EIA-906, "Power Plant Report"; EIA-886, "Annual Survey of Alternative Fueled Vehicle Suppliers and Users"; and EIA estimates..

## Appendix A

# Summary of Data Collection Operations and Report Methodology

The 2002 data for the *Natural Gas Annual* are taken primarily from Form EIA-176, "Annual Report of Natural and Supplemental Gas Supply and Disposition" and Form EIA-895, "Monthly Quantity and Value of Natural Gas Report." Each of these surveys and all other sources of data for this report are discussed separately in the following sections.

## Changes in the *Natural Gas Annual 2002*

### Introduction of Data from Natural Gas Marketers

For the states of Georgia, Maryland, New York, Ohio and Pennsylvania, natural gas prices in the residential and commercial sectors are comprised of data from Form EIA-176 and the Form EIA-910 "Monthly Natural Gas Marketer Survey". The EIA-910 collects data on the price and volume of natural gas sold by marketers, or companies that sell but do not deliver gas to residential and commercial customers. Further detail on the use of data from the EIA-910 follows in the section on coverage of consumer prices.

### Change in Presentation of Gulf of Mexico Production

The presentation of natural gas production volumes for the Federal Offshore portion of the Gulf of Mexico has been consolidated and is now presented as a separate data series. These changes have been incorporated in this report for report years 2001 and 2002. Because Federal Gulf of Mexico production was previously included in production for the States of Alabama, Louisiana, and Texas, the change in presentation does not affect total U.S. production for prior years.

### Cautionary Note: Number of Residential Consumers

EIA expects that there may be some double counting in the number of residential and commercial consumers reported for the years presented in this report, 1998 through 2002.

EIA collects information on the number of residential and commercial consumers through a survey of companies that deliver gas to consumers (Form EIA-176). The survey asks companies for the number of customers served as sales customers as well as customers to whom they deliver gas purchased from others. Traditionally, residential and commercial customers obtained the gas and all services associated with delivering it from their local distribution company (LDC). The LDC records these customers as sales customers. Customer choice programs allow consumers to select the provider from whom they purchase gas. When customers elect to purchase gas from a provider other than the LDC, the LDC continues to deliver the gas to the household even though it no longer sells the gas. When customers switch to another provider, they become transportation service customers for the LDC. A residential customer who enters a customer choice program during a year may be classified both as a traditional sales customer and, after entering the customer choice program, as a transportation service customer. In addition, some residential and commercial consumers may switch from transportation to sales service, for instance, when a choice pilot program ends. The double reporting affects the number of consumers shown in the *Natural Gas Annual*.

Tables 19-20 assist readers in evaluating the extent and possible effect of double reporting. Tables 19-20 list the number of sales and transportation customers, for residential and commercial consumers, respectively, reported on Form EIA-176 for 2001 and 2002. Appendix A provides a link to the survey Form EIA-176, "Annual Report of Natural and Supplemental Gas Supply and Disposition" on the EIA web site. Numbers of residential customers are reported on this form for both sales (in Section VI, lines 10.1) and transportation (in Section VI, line 11.1). Numbers of commercial customers are reported on this form for both sales (in Section VI, line 10.2) and transportation (in Section VI, line 11.2).

Customer choice programs, also known as retail unbundling programs, were implemented starting in the late 1990s. A description of these programs for States offering customer choice is on the EIA web site at:
www.eia.doe.gov/oil_gas/natural_gas/restructure/restructure.html.

# Appendix A

## Summary of
## Data Collection and
## Report Methodology

## Form EIA-176

### Survey Design

The original version of Form EIA-176 was approved in 1980 with a mandatory response requirement. Prior to 1980, published data were based on voluntary responses to Bureau of Mines, U.S. Department of the Interior predecessor Forms BOM-6-1340-A and BOM-6-1341-A of the same title.

The Form EIA-176 is a four-page form consisting of seven sections. Section I of the form contains identifying information including the company identification number, the company name and address, the State for which the report is filed, and address correction information. Section II asks for type of operations conducted by the company. The body of the form (Sections III-VII) is a multi-line schedule for reporting all supplies of natural gas and supplemental gaseous fuels and their disposition within the State indicated. Respondents filed completed forms with the EIA in Washington, D.C. Data for the year 2002 were due March 1, 2003.

A copy of the Form EIA-176 and instructions is available at: www.eia.doe.gov/oil_gas/natural_gas/survey_forms/nat_survey_forms.html

Data reported on this form are not considered proprietary.

In January 2003, forms for report year 2002 were mailed to all identified interstate natural gas pipeline companies; intrastate natural gas pipeline companies; investor and municipally owned natural gas distributors; underground natural gas storage operators; synthetic natural gas plant operators; field, well, or processing plant operators that delivered natural gas directly to consumers (including their own industrial facilities) other than for lease or plant use or processing; and field, well, or processing-plant operators that transported gas to, across, or from a State border through field or gathering facilities. Detailed instructions for completing the form were included in each survey package.

Completed forms were returned to the Natural Gas Division, Office of Oil & Gas, where each was checked for errors, corrected as necessary, and processed into computer-generated State and national data summaries.

### Response Statistics

Each company and its parent company or subsidiaries were required to file if they met the EIA-176 survey criteria. The original mailing totaled 1,973 questionnaire packages. To the original mailing list, 46 names were added and 34 were deleted as a result of the survey processing. Additions were identified from a special frames update process and by way of comparisons to additional natural gas industry survey mailing lists. Deletions resulted from post office returns and research that identified companies that were out of business, sold, or out of the scope of the survey. After all updates, the 2002 survey universe consisted of 1,985 active respondents.

Following the original mailing, a second request mailing, and nonrespondents follow-up, 1,949 responses were processed and entered into the database. There were 36 nonrespondents.

### Summary of Form EIA-176 Data Reporting Requirements

Computer edit programs verify the report year, State code, and arithmetic totals. Further tests were made to ensure that all necessary data elements were present and that the data were reasonable and internally consistent. The computerized edit system produced error listings with messages for each failed edit test. To resolve problems, respondents were contacted by telephone and were required to file amended forms with corrected data.

All natural gas and supplemental gaseous fuels volumes were reported on a physical custody basis in thousand cubic feet, and dollar values were reported to the nearest whole dollar. All volumes were reported at 14.73 pounds per square inch absolute pressure and 60 degrees Fahrenheit. Other minor report standards specified in the instructions booklet assure that the filed data are consistent and can be readily processed.

### Comparison of the Form EIA-176 with Other Data Sources

Comparison of the EIA-176 data with data from similar series is another method of ensuring the validity of the data published in this report. When these comparisons on a company-by-company basis showed significant differences, respondents were required to reconcile the data.

Data on imports and exports of natural gas, as collected by the EIA-176 survey, were checked by comparing individual responses with quarterly data reports, "Natural Gas Imports and Exports," filed with the Office of Fossil Energy, U.S. Department of Energy. These quarterly reports are required as a condition of import/export authorizations. Where discrepancies were noted, respondents were required to file corrected reports.

Similarly, data on the underground storage of natural gas were compared with submissions of Form EIA-191, Underground Gas Storage Report." If significant differences were noted, companies were contacted to reconcile the discrepancies. During 2002, the operators of underground storage facilities filing the Form EIA-191 reported volumes of injections and withdrawals almost identical to the volumes reported on the Form EIA-176.

Data on deliveries to residential, commercial, and industrial consumers were compared with data submitted on Form EIA-857, "Monthly Report of Natural Gas Purchases and Deliveries to Consumers." Where discrepancies were noted, respondents were required to file corrected reports, sometimes both surveys. Numerous telephone calls were made to clarify any misunderstandings concerning the correct filing of both forms. Typical errors included electric utility volumes combined with industrial volumes, sales for resale volumes reported as industrial consumption, and misinterpretation of general instructions.

Pipeline flows were also compared to pipeline capacity information filed at the Federal Energy Regulatory Commission. Flow volumes in excess of pipeline capacity required research and, in some cases, respondents were required to file corrected reports.

## Form EIA-895

### Survey Design

Beginning with 1980 data, natural gas production data previously obtained on an informal basis from appropriate State agencies were collected on Form EIA-627. This form was designed by the EIA to collect annual natural gas production data from the appropriate State agencies under a standard data reporting system within the limits imposed by the diversity of data collection systems of the various producing States.

In 1996, the Form was redesigned and assigned a new number. The new Form EIA-895 included both a Monthly and an Annual Schedule for quantity and value of natural gas production. The Annual Schedule is to be filed with the December

Monthly Schedule each year and should include any changes or updates in previously reported monthly data.

In April 2003, forms for report year 2002 were mailed to the appropriate agencies in 32 States. Completed forms were returned to the Natural Gas Division for review, processing, and compilation.

A copy of the Form EIA-895 and instructions is available at: www.eia.doe.gov/oil_gas/natural_gas/survey_forms/nat_survey_forms.html

### Response Statistics

Of the 32 natural gas producing States, 31 participated in the EIA-895 voluntary survey by filing the completed form or by responding to telephone contacts. Data for the State of Illinois, which did not respond, were estimated. Data on the quantities of nonhydrocarbon gases removed in 2002 were reported by the appropriate agencies of 9 of the producing States. These States accounted for 36 percent of total 2002 gross withdrawals.

The commercial recovery of methane from coalbeds contributes a significant amount to the production totals in a number of States. Coalbed methane seams production quantities (in million cubic feet) are included in gross withdrawals totals for the following States:    Alabama (115,949), Colorado (474,342), New Mexico (497,260) and Wyoming (327,785).

### Summary of EIA-895 Data Reporting Requirements

The Form EIA-895 is a three-page form divided into seven sections. Section I requests identifying information including the name and location of the responding State agency and the name and telephone number of a contact person within the agency. Section II and III collect monthly data on the production of natural gas including gross withdrawals from both gas and oil wells; volumes returned to formation for repressuring, pressure maintenance, and cycling; quantities vented and flared; quantities of nonhydrocarbon gases removed; quantities of fuel used on lease; and marketed production. Sections IV and V of the form request annual data, including the number of producing gas wells, the production of natural gas including gross withdrawals from both gas and oil wells; volumes returned to formation for repressuring, pressure maintenance, and cycling; quantities vented and flared; quantities of nonhydrocarbon gases removed; and quantities of fuel used on leases. Section VI and VII collect information on the marketed production value of marketed production and quantity of marketed production (value based).

### Routine Form EIA-895 Edit Checks

Each filing of the Form EIA-895 is manually checked for reasonableness and mathematical accuracy. Volumes are converted, as necessary, to a standard 14.73 pounds per square inch absolute pressure base. Value data are compared to the previous year's data for reasonableness. When data on nonhydrocarbon gases removed, gas vented and flared, and gas used for repressuring are not reported for a State that historically reported one or more of these items, a volume is imputed. The imputation is based on the average ratio of gas volumes in the missing category to total gross withdrawals in States with values reporting gas in that category. This average ratio is applied to the volume of total gross withdrawals reported by the State to calculate the volume for the missing items. State agencies are contacted by telephone in order to correct errors. Amended filings or resubmissions are not a requirement, since participation in the survey is voluntary.

### Comparison of the Form EIA-895 with Other Data Sources

Annual production data, as reported on the Form EIA-895, are compared to the sum of monthly data previously reported on the Monthly Schedule. The comparison is made in order to assure the reasonableness of the data reported on the Form EIA-895, Annual Schedule. Any significant differences are resolved by contacting the reporting State.

## Other Data Sources

### Offshore Production

The EIA developed estimates of the quantity of natural gas production and the number of producing wells for the Federal offshore Gulf of Mexico region from well-level data files provided by the U.S. Minerals Management Service (MMS) for the years of 2001 and 2002. The production data estimation methodology is described on the EIA-website.

### Marketed Production

Marketed production of natural gas is taken from responses to Part IV of the Form EIA-895. It is the quantity of natural gas produced that is available for marketing and is reported in Tables 3 and 6. It refers to quantities of gas available after processes related to production are complete. These processes are repressuring, pressure maintenance, cycling, venting and flaring, removing nonhydrocarbon gases, using fuel on the lease.

Average wellhead prices are calculated from volumes and values reported in Part IV of the Form EIA-895. These data are shown as "Reported Wellhead Value" in Table 6. The volumes in this section refer to the actual amounts of natural gas reported to the States as sold.

In many States, the marketed production volumes used in revenue calculations are larger than the reported wellhead value volumes. Differences in these volumes generally result from differences in definition and reporting requirements for separate data systems in the State. For example, while production quantities of Federal, tribal, and State royalty gas are included in marketed production, some State reporting rules exclude these quantities from reported wellhead value volumes.

### Natural Gas Processed and Extraction Loss

Extraction loss is the reduction in the volume of natural gas available for disposition resulting from the removal of natural gas liquid constituents at natural gas processing plants. It represents that portion of the "raw" gas stream transferred from the natural gas supply chain to the petroleum and natural gas liquids supply chain. Extraction loss does not include the reduction in volume resulting from the removal of nonhydrocarbon constituents or gas used as fuel, vented, flared, or otherwise disposed of within natural gas processing plants. Extraction loss also results in a reduction in the total heat (Btu) content of the natural gas stream equal to the heat content of the liquids extracted.

The Form EIA-64A, "Annual Report of the Origin of Natural Gas Liquids Production," collects data on the volume of natural gas received for processing, the total quantity of natural gas liquids produced, and the resulting shrinkage (defined as extraction loss in this report) from all natural gas processing- and cycling-plant operators. The quantity of natural gas received and liquids produced are reported by State of origin of the natural gas. Shrinkage volumes are calculated and reported by plant operators based upon the chemical composition of the liquids extracted using standard conversion factors specified in the form instructions. A description of the Form EIA-64A survey is presented in the EIA publication, *U.S. Crude Oil, Natural Gas, and Natural Gas Liquids Reserves, Annual Reports*.

The heat (Btu) content of liquids extracted is not reported on the Form EIA-64A. Therefore, in order to estimate the extraction loss heat content, data reported on the Form EIA-816, "Monthly Natural Gas Liquids Report," were used to determine the individual products contained in the total liquids reported on Form EIA-64A. A description of the Form EIA-816 survey is presented in the EIA publication, *Petroleum Supply Annual 2002*, Volume II.

To estimate the quantities of individual products extracted in each State, data from the Form EIA-64A survey were used to determine the total liquids production, and data from the Form EIA-816 survey were used to estimate the quantities of the individual products contained in those total liquids.

The Form EIA-816 captures information on the quantity of individual components (i.e., ethane, propane, normal butane, isobutane, and pentanes plus) produced or contained in mixes of plant liquids as determined by chemical analysis. The volumetric ratios of the individual components to the total liquids, as calculated from the 12 monthly Form EIA-816 reports for each State, were applied to the annual total liquids production, as reported on the Form EIA-64A, to estimate the quantities of individual components removed at gas-processing plants.

The heat (Btu) content of extracted liquids was estimated by applying conversion factors to the estimated quantities of products extracted in each State. These conversion factors, in million Btu per barrel of liquid produced, were ethane, 3.082; propane, 3.836; normal butane, 4.326; isobutane, 3.974; and pentane plus, 4.620. It should be noted that, at the State level, extraction losses are not necessarily related to State production.

### Imports and Exports

Volumes and prices of natural gas imports and exports were reported to the Office of Fossil Energy, U.S. Department of Energy, *Natural Gas Imports and Exports*. These data are nonproprietary and are filed annually by each individual or organization having authorization to import and export natural gas.

### Lease and Plant Fuel

Lease and plant fuel represent those quantities of natural gas used in well, field, and/or lease operations (such as gas used in drilling operations, heaters, dehydrators, and field compressors) and as fuel in natural gas processing plants.

Lease fuel data were collected for report year 2002, on the Form EIA-895, "Monthly Quantity and Value of Natural Gas Report." Of the 32 States and the Federal Gulf of Mexico represented on the Form EIA-895, 14 States reported quantities of natural gas used as lease fuel. In the absence of reporting quantities on the Form EIA-895, the Form EIA-176 was used to estimate lease fuel quantities. Although EIA recognizes that lease data collected on the Form EIA-176 do not constitute a census or result from a statistically selected sample, the

data collected in the survey provide the best information available to the EIA for estimating such usage. To estimate lease use during 2002 (Table 15), several simplifying assumptions were made:

- The quantity of gas used for lease fuel was assumed to be a function of gross withdrawals of natural gas from gas and oil wells.

- The average proportion of company-owned on-system production reported as used in lease operations by respondents to the Form EIA-176 was assumed to be typical of the average use by all operators as a proportion of gross withdrawals.

- Average usage was calculated separately for Alaska and for the lower 48 States to reflect the distinctive field operations in Alaska, particularly on the North Slope.

Form EIA-176 respondents reported volumes of company-owned onsystem production equivalent to 1.29 percent of 2002 total gross withdrawals reported on the EIA-895 (1.4 percent of withdrawals in Alaska and 1.28 percent of withdrawals in the lower 48 States). Lease use reported by respondents on the EIA-176 averaged 6.3 percent of their reported production in Alaska and 3.9 percent of their reported production in the lower 48 States. The fuel-use estimates shown in Table 15 were calculated by applying the EIA-176 ratios to the gross withdrawals from the States not reporting lease use on the EIA-895.

### Electric Power Generation Data

The data reported for the electric power sector in the *Natural Gas Annual 2002* are derived entirely from data submitted on electricity data collection forms. These include Form EIA-860, "Annual Electric Generator Report", Form EIA-906, "Power Plant Report", and Form FERC-423, "Monthly Report of Cost and Quality of Fuels for Electric Plants". The *Natural Gas Annual 2002* reports natural gas prices for electric utilities only.

The electric power sector includes electricity-only and combined heat and power plants whose primary business is to sell electricity, or electricity and heat, to the public. The change from "electric utilities" to "electric power" effected in *Natural Gas Annual, 2001*, was made in order to maintain consistency among EIA publications.

### Natural Gas Consumed as a Vehicle Fuel

Volumes of natural gas consumed as vehicle fuel published in the *Natural Gas Annual 2001* were estimated by the Coal, Nuclear, and Renewable Fuels Division of EIA based on Form EIA-886, "Annual Survey of Alternative Fueled Vehicle Suppliers and Users." Vehicle fuel prices continue to be calculated from data obtained from the EIA-176.

### Coverage of Consumer Prices

Coverage for prices varies by consumer sector as discussed below. All average prices are computed by dividing the reported revenue by its associated sales volume. Prices for deliveries of natural gas to residential, commercial and industrial consumers are calculated from reports to Form EIA-176, "Annual Report of Natural and Supplemental Gas Supply and Disposition" for all States and sectors except for Georgia, Maryland, New York, Ohio and Pennsylvania.

With the unbundling of services in the natural gas industry, pipeline and local distribution companies provide transportation service for end-user customers to whom they do not sell the gas. In this report, those volumes are described as deliveries of gas for the account of others. When companies that deliver gas are the sellers of that gas, they are able to report the associated revenue to the Energy Information Administration. Those volumes are described as onsystem sales. When the firm that physically delivers gas to the end user acts as a transportation agent, it does not know the sales price of the gas. Respondents, therefore, do not report a revenue amount associated with deliveries for the account of others in their submissions of the Form EIA-176. In the States of Georgia, Maryland, New York, Ohio and Pennsylvania, natural gas marketers who sell gas transported to residential and commercial customers by local distribution companies report the revenues from the sale of this gas to EIA on Form EIA-910, "Monthly Natural Gas Marketer Survey." In these States, prices in the residential and commercial sectors are calculated by combining data from the Form EIA-176 and Form EIA-910.

City gate prices are calculated from reports to the Form EIA-857, "Monthly Report of Natural Gas Purchases and Deliveries to Consumers." Both the EIA-176 and EIA-857 are completed by companies that deliver natural gas to end-use consumers while the EIA-910 is completed by marketers or companies that sell but do not deliver natural gas to end-use consumers.

**City Gate:** City gate prices represent the total cost paid by gas distribution companies for gas received at the point where the gas is physically transferred from a pipeline company or transmission system. This price is intended to reflect all charges for the acquisition, storage, and transportation of gas as well as other charges associated with the LDC s obtaining the gas for sale to consumers.

Prices for gas delivered to the city gate represent all of the volumes of gas delivered. Since these prices are reported on a monthly form, the annual average city gate price is calculated by summing the monthly revenues reported and dividing that figure by the sum of the monthly reported volumes.

**Residential:** Prices in this publication for the residential sector cover nearly all of the volumes of gas delivered.

**Commercial and Industrial:** Prices for the commercial and industrial sectors are often associated with relatively small volumes of the total gas delivered. This occurs because they are reported by those that deliver gas and not by either the gas resellers or by the consumers. The delivery agent provides transportation service only and does not know the commodity cost of the gas it transports.

Natural gas prices reported for commercial and industrial consumers represent only those purchases from local distribution companies except for the States of Georgia, Maryland, New York, Ohio and Pennsylvania where commercial prices include data from natural gas marketers who sell gas transported to end-use commercial customers by local distribution companies. With the above exception, natural gas prices for commercial and industrial customers exclude volumes transported, but not sold, by the local distribution company or pipeline company.

**Electric Utilities:** Prices for natural gas are also reported to the EIA on the Form FERC-423, "Monthly Report of Cost and Quality of Fuels for Electric Plants," a consumer survey form. Electric utility prices in this report are taken from this form. The respondents are all large regulated electric utilities that report consumption and prices of fuels and represent most of the volumes delivered to electric utilities. These prices are also published in the EIA report, *Cost and Quality of Fuels for Electric Utility Plants*. Prices to electric utilities, because they are derived from a survey of the utilities themselves, represent most of the volumes consumed by this sector.

**Vehicle Fuel:** For the *Natural Gas Annual 2002*, natural gas consumption for vehicle fuel estimates were prepared by the Coal, Nuclear, and Renewable Fuels Division of EIA based on the Form EIA-886, "Annual Survey of Alternative Fueled Vehicle Suppliers and Users." Vehicle fuel prices continue to be calculated from data obtained from the Form EIA-176. Most of the natural gas delivered for vehicle fuel represents deliveries to refueling stations that are used primarily or exclusively by fleet vehicles. Thus, the prices are often those associated with the operation of fleet vehicles and may be based on internal transfer prices for companies primarily in the natural gas business. Because two different sources are used, with a different reporting population, coverage varies and leads to instances in which volumes, but no price data are available.

## Natural Gas Balancing Item

The natural gas balancing item represents the difference between the sum of the components of natural gas supply and the sum of the components of natural gas disposition. It is calculated for each State as the result of a comparison between total reported supply and total reported disposition (Table 2). In the formula used, total reported supply is the sum of marketed production, net interstate movements, net movements across U.S. borders, and supplemental gaseous fuels supplies. Total reported disposition is the sum of extraction loss, net storage changes (net additions to storage), and consumption. When this calculation results in a negative quantity for the balancing item it represents an excess of reported supply in relation to reported disposition, and positive quantities indicate the opposite situation.

The differences between supply and demand represent quantities lost, the net result of gas company conversions of flow data metered at varying temperature and pressure conditions to a standard temperature and pressure base, metering inaccuracies, the effect of variations in company accounting and billing practices, differences between billing cycle and calendar-period time frames, and imbalances resulting from EIA s merger of data reporting systems, which vary in scope, format, definitions, and type of respondents. The balancing items in individual States may also reflect the underreporting on Form EIA-176 of gas transported across State borders for the account of others by some interstate pipelines.

## Table A1. Natural Gas Unaccounted for by State, 1998-2002
### (Million Cubic Feet)

Appendix – Table A1

| State | 1998 | 1999 | 2000 | 2001 | 2002 |
|---|---|---|---|---|---|
| Alabama | 32,788 | 3,021 | 16,075 | -8,569 | 11,925 |
| Alaska | 3,923 | -1,993 | -3,905 | -37 | -1,808 |
| Arizona | -40,211 | 23,178 | 4,114 | -2,321 | 66,601 |
| Arkansas | 3,985 | 4,301 | 4,206 | 11,557 | 5,371 |
| California | 61,625 | -9,344 | -19,844 | 47,830 | 122,029 |
| Colorado | 11,664 | 15,001 | 24,278 | 3,527 | 8,314 |
| Connecticut | 2,187 | 1,948 | 21 | 1,537 | 484 |
| D.C. | 794 | 1,398 | 695 | 1,330 | 812 |
| Delaware | 4,808 | -1,254 | 1,864 | 1,573 | 385 |
| Florida | 3,105 | 8,645 | 1,509 | 2,325 | 325 |
| Georgia | 9,828 | -49,244 | 2,205 | 87 | 949 |
| Hawaii | 61 | 17 | -73 | -129 | -132 |
| Idaho | -19,015 | -11,107 | -15,955 | -915 | -98 |
| Illinois | 14,312 | 8,777 | 12,209 | 98,854 | 11,356 |
| Indiana | 10,081 | 6,268 | 8,983 | -9,698 | -986 |
| Iowa | 34,578 | 17,180 | 6,248 | 300 | 953 |
| Kansas | 22,666 | 11,636 | 10,844 | -451 | -1,139 |
| Kentucky | 409 | 2,045 | 9,248 | -2,092 | 4,190 |
| Louisiana | 82,184 | -14,397 | 15,943 | -44,036 | 95,341 |
| Maine | 78 | 570 | -3,190 | 822 | 1,179 |
| Maryland | 6,588 | 9,570 | 8,163 | 7,242 | 4,526 |
| Massachusetts | 4,702 | 11,798 | 2,124 | 4,854 | 3,472 |
| Michigan | 2,685 | 32,940 | 7,335 | 7,494 | 12,421 |
| Minnesota | 825 | 3,643 | 5,006 | 9,218 | -1,813 |
| Mississippi | -122,470 | 18,000 | 7,036 | -10,655 | 12,244 |
| Missouri | 7,267 | 9,669 | 25,317 | -1,892 | 7,640 |
| Montana | 2,146 | -1,613 | 1,342 | -1,130 | 905 |
| Nebraska | 1,630 | -281 | 5,444 | -4,600 | 951 |
| Nevada | 623 | -1,947 | -5,953 | -830 | 2,958 |
| New Hampshire | 149 | 540 | 282 | -285 | 467 |
| New Jersey | -16,615 | -22,294 | 7,582 | 7,470 | 8,960 |
| New Mexico | -2,065 | -13,432 | -606 | -49,320 | 3,446 |
| New York | 115,611 | 42,660 | 88,282 | 46,171 | -14,090 |
| North Carolina | -274 | 27,932 | 4,534 | -2,758 | -4,220 |
| North Dakota | 7,590 | -137 | 748 | -396 | -1,226 |
| Ohio | 6,586 | 32,614 | 17,624 | -12,375 | 27,585 |
| Oklahoma | 29,312 | -14,856 | 33,494 | 862 | 26,367 |
| Oregon | 3,116 | 390 | 2,022 | -59,767 | 1,344 |
| Pennsylvania | 6,187 | -7,268 | 14,472 | 1,377 | 32,814 |
| Rhode Island | -3,400 | -2,901 | -878 | 914 | -1,594 |
| South Carolina | 138 | 1,049 | 32,754 | -17,320 | -1,050 |
| South Dakota | 1,227 | -339 | 1,511 | 347 | 733 |
| Tennessee | 1,630 | 6,936 | 10,748 | 12,498 | 2,436 |
| Texas | -73,153 | 40,909 | 22,008 | -101,249 | -214,617 |
| Utah | 3,895 | 7,090 | 5,348 | -1,912 | -3,302 |
| Vermont | 777 | -915 | -518 | 0 | 56 |
| Virginia | 5,521 | 7,789 | 9,678 | 6,600 | 3,809 |
| Washington | 1,772 | -1,662 | 3,940 | -26,426 | 3,656 |
| West Virginia | 11,554 | 6,709 | 8,641 | 5,256 | 5,249 |
| Wisconsin | 7,791 | 4,770 | -3,652 | -857 | -1,275 |
| Wyoming | 7,961 | 5,495 | 4,375 | 1,059 | 12,566 |
| Total | 259,157 | 219,507 | 393,678 | -78,912 | 257,472 |

**Note:** Unaccounted for natural gas represents the difference between the sum of the components of natural gas supply and the sum of components of natural gas disposition, as reported by survey respondents. These differences may be due to quantities lost or to the effects of differences in company accounting systems in terms of scope and defin- ition. A positive "unaccounted for" volume means that supply exceeds disposition by that amount. A negative "unaccounted for" volume means that supply is less than disposition. **Source:** Energy Information Administration (EIA), Form EIA-176, "Annual Report of Natural and Supplemental Gas Supply and Disposition."

# Appendix B

## Metric and Thermal Conversion Tables

## Appendix B

# Metric and Thermal Conversion Tables

### Metric Conversions

Table B1 presents Summary Statistics for Natural Gas in the United States for 1998 through 2002 in metric units of measure. Volumes are shown in cubic meters instead of cubic feet. Prices are shown in dollars per thousand cubic meters instead of dollars per thousand cubic feet. The data in this table have been converted from the data that appear in Table 1 of this report.

### Thermal Conversions

Table B2 presents the thermal (Btu) conversion factors and the converted data for natural gas supply and disposition from 1998 through 2002. A brief documentation for the thermal conversion factors follows:

- *Marketed Production.* The conversion factor is calculated by adding the total heat content of dry production to the total heat content of extraction loss and dividing the resulting sum by the total quantity of dry production and extraction loss (see below).

- *Extraction Loss.* The conversion factor is obtained from Appendix A of this publication.

- *Dry Production.* The conversion factor is assumed to be the same as the thermal conversion factors for consumption (see below).

- *Receipts at U.S. Borders.* The conversion factor for 1998 imports was obtained from the discontinued Form FPC-14, "Annual Report for Importers and Exporters of Natural Gas." The 1998 conversion factor has been applied to volumes reported through 2002. Intransit receipts are assumed to have the same average heat content as imports.

- *Withdrawals from Storage.* Both underground and LNG storage withdrawals are assumed to have the same heat content as consumption (see below).

- *Supplemental Gas Supplies.* This conversion factor is assumed to be the same as that for consumption (see below).

- *Balancing Item.* This conversion factor is calculated by subtracting the total heat content of all other items of supply from the heat content of total disposition (from Table B2) and dividing the difference by the balancing item quantity.

- *Consumption.* The thermal conversion factor for total consumption (lease fuel, plant fuel, pipeline fuel, and deliveries to consumers) is the average heat content for deliveries to end users as reported on Form EIA-176, "Annual Report of Natural and Supplemental Gas Supply and Disposition." Average heat content of electric utility consumption is obtained from EIA's *Electric Power Annual*. The factor for nonutility consumption is calculated by subtracting the total heat content of electric utility consumption from the heat content of total consumption and dividing the difference by the quantity of nonutility consumption (total consumption less electric utility consumption).

- *Deliveries at U.S. Borders.* The conversion factor for 1999 exports was obtained from the discontinued Form FPC-14. The 1998 conversion factor has been applied to volumes reported through 2002. Intransit deliveries are assumed to have the same average heat content as exports.

- *Additions to Storage.* Additions to both underground and LNG storage are assumed to have the same heat content as consumption (see above).

**Appendix - Table B1**

**Table B1.  Summary Statistics for Natural Gas in the United States, Metric Equivalents, 1998-2002**

|  | 1998 | 1999 | 2000 | 2001 | 2002 |
|---|---|---|---|---|---|
| **Number of Gas and Gas Condensate Wells** | | | | | |
| Producing at End of Year | 316,929 | 302,421 | 341,678 | 373,304 | 383,626 |
| **Production (million cubic meters)** | | | | | |
| Gross Withdrawals | | | | | |
| From Gas Wells | 502,016 | 498,099 | 501,946 | 513,368 | 501,998 |
| From Oil Wells | 180,650 | 176,485 | 182,582 | 180,417 | 176,963 |
| Total | 682,666 | 674,584 | 684,528 | 693,785 | 678,961 |
| Repressuring | -97,043 | -93,235 | -95,701 | -95,451 | -97,839 |
| Vented and Flared | -2,917 | -3,123 | -2,583 | -2,744 | -2,808 |
| Wet After Lease Separation | 582,706 | 578,226 | 586,243 | 595,589 | 578,314 |
| Nonhydrocarbon Gases Removed | -17,463 | -17,415 | -14,313 | -13,103 | -14,220 |
| Marketed Production | 565,242 | 560,811 | 571,930 | 582,486 | 564,094 |
| Extraction Loss | -26,555 | -27,541 | -28,757 | -27,014 | -27,099 |
| Total Dry Production | 538,687 | 533,270 | 543,173 | 555,472 | 536,995 |
| **Supply (million cubic meters)** | | | | | |
| Dry Production | 538,687 | 533,270 | 543,173 | 555,472 | 536,995 |
| Receipts at U.S. Borders | | | | | |
| Imports | 89,256 | 101,530 | 107,083 | 112,614 | 113,705 |
| Intransit Receipts | 13,637 | 13,775 | 12,781 | 15,267 | 16,670 |
| Withdrawals from Storage | | | | | |
| Underground Storage | 67,319 | 78,481 | 99,058 | 65,375 | 88,849 |
| LNG Storage | 1,539 | 1,024 | 1,459 | 1,004 | 1,212 |
| Supplemental Gas Supplies | 2,894 | 2,782 | 2,555 | 2,444 | 1,925 |
| Balancing Item | 17,976 | -3,076 | -6,806 | 5,277 | -2,995 |
| Total Supply | 731,268 | 727,663 | 759,250 | 757,454 | 756,362 |
| **Disposition (million cubic meters)** | | | | | |
| Consumption | 629,935 | 634,443 | 660,720 | 631,200 | 651,218 |
| Deliveries at U.S. Borders | | | | | |
| Exports | 4,503 | 4,627 | 6,901 | 10,570 | 14,618 |
| Intransit Deliveries | 13,010 | 14,004 | 14,628 | 16,279 | 16,116 |
| Additions to Storage | | | | | |
| Underground Storage | 82,220 | 73,553 | 76,010 | 98,125 | 75,602 |
| LNG Storage | 1,639 | 1,085 | 1,044 | 1,280 | 1,188 |
| Total Disposition | 731,308 | 727,713 | 759,304 | 757,454 | 758,741 |
| **Consumption (million cubic meters)** | | | | | |
| Lease Fuel | 21,843 | 19,241 | 21,150 | 21,164 | 20,728 |
| Pipeline and Distribution Use | 17,995 | 18,273 | 18,185 | 17,697 | 18,889 |
| Plant Fuel | 11,364 | 11,313 | 11,442 | 10,510 | 10,831 |
| Delivered to Consumers | | | | | |
| Residential | 128,000 | 133,816 | 141,476 | 135,190 | 138,461 |
| Commercial | 84,936 | 86,215 | 90,117 | 86,185 | 87,875 |
| Industrial | 235,608 | 228,782 | 230,563 | 208,765 | 213,401 |
| Vehicle Fuel | 265 | 329 | 361 | 412 | 423 |
| Electric Power | 129,926 | 136,474 | 147,427 | 151,277 | 160,610 |
| Total Delivered to Consumers | 578,734 | 585,616 | 609,944 | 581,829 | 600,771 |
| Total Consumption | 629,935 | 634,443 | 660,720 | 631,200 | 651,218 |
| **Delivered for the Account of Others** | | | | | |
| **(million cubic meters)** | | | | | |
| Residential | 2,977 | 6,377 | 10,533 | 10,489 | 11,936 |
| Commercial | 28,041 | 29,217 | 32,495 | 29,487 | 31,202 |
| Industrial | 197,765 | 185,886 | 184,888 | 165,469 | 165,206 |

See footnotes at end of table.

Appendix - Table B1

Table B1.  Summary Statistics for Natural Gas in the United States, Metric Equivalents, 1998-2002
(Continued)

|  | 1998 | 1999 | 2000 | 2001 | 2002 |
|---|---|---|---|---|---|
| **Number of Consumers** |  |  |  |  |  |
| Residential............................................... | 57,321,746 | 58,223,229 | 59,252,728 | 60,252,689 | 61,145,207 |
| Commercial.............................................. | 5,044,497 | 5,010,189 | 5,010,817 | 5,029,315 | 5,059,689 |
| Industrial................................................. | 226,191 | 228,331 | 220,251 | 216,147 | 210,563 |
| **Average Annual Consumption per Consumer** |  |  |  |  |  |
| **(thousand cubic meters)** |  |  |  |  |  |
| Commercial.............................................. | 17 | 17 | 18 | 17 | 17 |
| Industrial................................................. | 1,042 | 1,002 | 1,047 | 966 | 1,013 |
| **Average Prices for Natural Gas** |  |  |  |  |  |
| **(dollars per thousand cubic meters)** |  |  |  |  |  |
| Wellhead (Marketed Production).................. | 69.22 | 77.34 | 129.96 | 141.26 | 104.18 |
| Imports .................................................... | 69.57 | 79.10 | 139.49 | 156.44 | 110.89 |
| Exports .................................................... | 86.52 | 92.17 | 144.79 | 147.97 | 120.42 |
| Pipeline and Distribution Use ..................... | 70.98 | 66.39 | 104.88 | 125.37 | NA |
| City Gate .................................................. | 108.42 | 109.48 | 163.15 | 202.00 | 146.56 |
| Delivered to Consumers |  |  |  |  |  |
| Residential............................................ | 240.85 | 236.26 | 274.04 | 340.43 | 279.34 |
| Commercial........................................... | 193.52 | 188.23 | 232.72 | 297.35 | 234.49 |
| Industrial.............................................. | 110.89 | 110.18 | 157.15 | 185.05 | 141.96 |
| Vehicle Fuel.......................................... | 162.09 | 153.27 | 195.64 | 233.08 | 156.80 |
| Electric Utilities.................................... | 84.76 | 92.52 | 154.68 | 162.80 | 133.14 |

**Notes:** The United States includes the 50 States and the District of Columbia. Totals may not equal sum of components due to independent rounding.

**Sources:** Energy Information Administration (EIA), Form EIA-176, "Annual Report of Natural and Supplemental Gas Supply and Disposition"; Form EIA-895, "Monthly Quantity and Value of Natural Gas Report"; Form EIA-857, "Monthly Report of Natural Gas Purchases and Deliveries to Consumers"; Form EIA-816, "Monthly Natural Gas Liquids Report"; Form EIA-64A, "Annual Report of the Origin of Natural Gas Liquids Production"; Form EIA-906, "Power Plant Report"; Form FERC-423, "Underground Gas Storage Report"; Office of Fossil Energy, U.S. Department of Energy, Natural Gas Imports and Exports; and the U.S. Minerals Management Service.

Appendix - Table B2

## Table B2. Thermal Conversion Factors and Data, 1998-2002

| | 1998 | 1999 | 2000 | 2001 | 2002 |
|---|---|---|---|---|---|
| **Conversion Factor (Btu per cubic foot)** | | | | | |
| **Production** | | | | | |
| Marketed | 1,109 | 1,107 | 1,107 | 1,105 | 1,107 |
| Extraction Loss | 2,694 | 2,653 | 2,662 | 2,687 | 2,671 |
| **Total Dry Production** | **1,031** | **1,027** | **1,025** | **1,028** | **1,028** |
| **Supply** | | | | | |
| Dry Production | 1,031 | 1,027 | 1,025 | 1,028 | 1,028 |
| Receipts at U.S. Borders | | | | | |
| Imports | 1,023 | 1,022 | 1,023 | 1,023 | 1,022 |
| Intransit Receipts | 1,023 | 1,022 | 1,023 | 1,023 | 1,022 |
| Withdrawals from Storage | | | | | |
| Underground Storage | 1,031 | 1,027 | 1,025 | 1,028 | 1,028 |
| LNG Storage | 1,031 | 1,027 | 1,025 | 1,028 | 1,028 |
| Supplemental Gas Supplies | 1,031 | 1,027 | 1,025 | 1,028 | 1,028 |
| Balancing Item | 5,939 | -30,705 | 1,051 | 1,058 | 155 |
| **Total Supply** | **NA** | **NA** | **NA** | **NA** | **NA** |
| **Disposition** | | | | | |
| Consumption | 1,031 | 1,027 | 1,025 | 1,028 | 1,028 |
| (Electric Power) | (1,025) | (1,022) | (1,021) | (1,020) | (1,021) |
| (Other Sectors) | (1,299) | (1,308) | (1,026) | (1,031) | (1,030) |
| Deliveries at U.S. Borders | | | | | |
| Exports | 1,011 | 1,006 | 1,006 | 1,010 | 1,008 |
| Intransit Deliveries | 1,011 | 1,006 | 1,006 | 1,010 | 1,008 |
| Additions to Storage | | | | | |
| Underground Storage | 1,031 | 1,027 | 1,025 | 1,028 | 1,028 |
| LNG Storage | 1,031 | 1,027 | 1,025 | 1,028 | 1,028 |
| **Total Disposition** | **NA** | **NA** | **NA** | **NA** | **NA** |
| **Summary Data (billion Btu)** | | | | | |
| **Production** | | | | | |
| Marketed | 22,139,605 | 21,921,395 | 22,364,843 | 22,728,539 | 22,050,706 |
| Extraction Loss | -2,526,324 | -2,580,690 | -2,703,325 | -2,562,971 | -2,555,922 |
| **Total Dry Production** | **19,613,281** | **19,340,705** | **19,661,518** | **20,165,567** | **19,494,784** |
| **Supply** | | | | | |
| Dry Production | 19,613,281 | 19,340,705 | 19,661,518 | 20,165,567 | 19,494,784 |
| Receipts at U.S. Borders | | | | | |
| Imports | 3,063,489 | 3,664,386 | 3,868,580 | 4,068,409 | 4,103,803 |
| Intransit Receipts | 492,657 | 497,171 | 461,755 | 551,557 | 601,654 |
| Withdrawals from Storage | | | | | |
| Underground Storage | 2,451,042 | 2,846,366 | 3,585,660 | 2,373,330 | 3,225,521 |
| LNG Storage | 56,050 | 37,156 | 52,801 | 36,463 | 43,994 |
| Supplemental Gas Supplies | 105,357 | 100,901 | 92,491 | 88,729 | 69,883 |
| Balancing Item | 3,761,668 | 3,390,154 | -246,210 | 197,081 | -16,401 |
| **Total Supply** | **25,987,397** | **25,715,282** | **27,476,595** | **27,481,136** | **27,523,238** |
| **Disposition** | | | | | |
| Consumption | 22,934,120 | 23,008,272 | 23,922,569 | 22,914,764 | 23,641,485 |
| (Electric Power) | (4,702,991) | (4,925,561) | (5,315,657) | (5,449,147) | (5,791,007) |
| (Other Sectors) | (22,934,120) | (23,008,272) | (18,606,912) | (17,465,617) | (17,850,477) |
| Deliveries at U.S. Borders | | | | | |
| Exports | 158,783 | 164,395 | 245,178 | 377,011 | 520,363 |
| Intransit Deliveries | 464,515 | 497,511 | 519,665 | 580,619 | 573,677 |
| Additions to Storage | | | | | |
| Underground Storage | 2,993,596 | 2,667,642 | 2,751,392 | 3,562,265 | 2,744,600 |
| LNG Storage | 59,681 | 39,368 | 37,791 | 46,476 | 43,113 |
| **Total Disposition** | **25,987,397** | **25,715,282** | **27,476,595** | **27,481,136** | **27,523,238** |

NA = Not available.
**Notes:** See accompanying text for conversion factor documentation. Items appearing in parentheses are subsets of other items for which data are shown in this table and are not involved in the summing of supply and disposition. Totals may not equal sum of components due to independent rounding.

**Sources:** Energy Information Administration (EIA), Form EIA-895, "Monthly Quantity and Value of Natural Gas Report"; Form EIA-176, "Annual Report of Natural and Supplemental Gas Supply and Disposition"; Form EIA-64A, "Annual Report of the Origin of Natural Gas Liquids Production"; Office of Fossil Energy, U.S. Department of Energy, Natural Gas Imports and Exports; Form EIA-191, "Underground Gas Storage Report"; Form EIA-767, "Steam-Electric Plant Operating and Design Report," EIA-906, "Power Plant Report"; EIA-886, "Annual Survey of Alternative Fueled Vehicle Suppliers and Users"; and EIA estimates.